**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| PERSONALIZED MEDIA COMMUNICATIONS, LLC<br><br>        Plaintiff,<br><br>v.<br><br>NETFLIX, INC.<br><br>        Defendant. | Civil Action No. 1:20-cv-3708-GHW |

**MEMORANDUM OF LAW IN SUPPORT OF PMC'S OPPOSITION TO
NETFLIX, INC.'S MOTION FOR JUDGMENT ON THE PLEADINGS
REGARDING THE '217, '344, AND '528 PATENTS**

### TABLE OF CONTENTS

INTRODUCTION ....................................................................**Error! Bookmark not defined.**

I.    The *Alice* Framework in the Rule 12 Context............................................................ 2

    *a.*    *Alice - Step One* .......................................................................................... 2

    *b.*    *Alice - Step Two* .......................................................................................... 7

    *c.*    *Burden of Proof* ........................................................................................... 8

II.    Netflix's Use of Incomplete, Cherry-Picked Claims Warrants Denial of Its Motion .... 11

III.    Netflix Is Not Entitled To Judgment On The Pleadings As To The '344 Patent ........... 11

    *a.*    *Alice* - Step One ....................................................................................... 12

    *b.*    *Alice - Step Two* ......................................................................................... 16

        A.  Dependent Claim 2 is Equally Eligible ........................................................ 18

IV.    Netflix Is Not Entitled To Judgment On The Pleadings As To The '528 ...................... 19

    *a.*    *Alice – Step One* ........................................................................................ 19

    *b.*    *Alice – Step Two* ........................................................................................ 23

        A.  The Dependent Claims Are Equally Eligible ............................................. 24

V.    Netflix Is Not Entitled To Judgment On The Pleadings As To The '217 Patent ........... 25

    *a.*    *Alice – Step One* ........................................................................................ 25

    *b.*    *Alice – Step Two* ........................................................................................ 29

**CONCLUSION** ........................................................................................................... 30

**<u>TABLE OF AUTHORITIES</u>**

**Cases**                                                                          **Page(s)**

*Aatrix Software, Inc. v. Green Shades Software, Inc.*,
    882 F.3d 1121 (Fed. Cir. 2018).........................................................................10

*Aatrix Software, Inc. v. Green Shades Software, Inc.*,
    890 F.3d 1354 (Fed. Cir. 2018)................................................................. *passim*

*Alice Corp. Pty. v. CLS Bank Int'l*,
    134 S. Ct. 2347 (2014)............................................................................ *passim*

*Automated Tracking Sols., LLC v. Coca-Cola Co.*,
    723 F. App'x 989 (Fed. Cir. 2018) .....................................................................10

*Bascom Glob. Internet Services, Inc. v. AT&T Mobility LLC*,
    827 F.3d 1341 (Fed. Cir. 2016)......................................................................7, 23

*Berkheimer v. HP*,
    881 F.3d 1360 (Fed. Cir. 2018)................................................................. *passim*

*CardioNet, LLC v. InfoBionic, Inc*,
    955 F.3d 1358 (Fed. Cir. 2020)...............................................................3, 14, 15

*Cellspin Soft, Inc. v. Fitbit, Inc.*,
    927 F.3d 1306 (Fed. Cir. 2019)................................................................. *passim*

*Core Wireless Licensing S.A.R.L. v. LG Electronics, Inc.*,
    880 F.3d 1356 (Fed. Cir. 2018)................................................................. *passim*

*DDR Holdings, LLC v. Hotels.com, L.P.*,
    773 F.3d 1245 (Fed. Cir. 2014)..........................................................................10

*Enfish, LLC v. Microsoft Corp.*,
    822 F.3d 1327 (Fed. Cir. 2016)................................................................. *passim*

*Exergen Corp. v. Kaz USA, Inc.*,
    No. 13-10628-RGS, 2015 WL 8082402 (D. Mass. Dec. 7, 2015)...................11, 12

*IBM v. Priceline Grp. Inc.*,
    No. 15-137-LPS-CJB, 2016 U.S. Dist. LEXIS 18660 (D. Del. Feb. 16, 2016) ......................3

*In Uniloc USA, Inc. v. LG Elecs. USA, Inc.*,
    957 F.3d 1303 (Fed. Cir. 2020)................................................................. *passim*

*Koninklijke KPN N.V. v. Gemalto M2M GmbH*,
    942 F.3d 1143 (Fed. Cir. 2019)..........................................................................3, 15

*McRO, Inc. v. Bandai Namco Games America Inc.*,
   837 F.3d 1299 (Fed. Cir. 2016) ................................................................................. 3

*MyMail, Ltd. v. ooVoo, LLC*,
   934 F.3d 1373 (Fed. Cir. 2019) ................................................................................. 8

*Nat. Alternatives Int'l, Inc. v. Creative Compounds*,
   LLC, 918 F.3d 1338 (Fed. Cir. 2019) .................................................................... 9, 29

*Personalized Media Commc'ns, LLC v. Amazon.com, Inc.*,
   161 F. Supp. 3d 325 (D. Del. 2015) ......................................................................... 14

*Personalized Media Commc'ns, LLC v. Funai Elec. Co.*,
   No. 2:16-cv-00105, 2017 WL 957719 (E.D. Tex. Feb. 22, 2017) ........................... 26

*Personalized Media Commc'ns, LLC v. Samsung Elecs. Am., Inc.*,
   No. 2:15-cv-1754, 2016 WL 9240544 (E.D. Tex. Sept. 21, 2016) .......................... 26

*Personalized Media Communic'ns, LLC v. Apple Inc.*,
   No. 2:15-CV-1366, 2016 WL 5719701 (E.D. Tex. Sept. 13, 2016) ........................ 22

*RF Del., Inc. v. Pac. Keystone Techs., Inc.*,
   326 F.3d 1255 (Fed. Cir. 2003) ......................................................................... 11, 25

*SRI Int'l, Inc. v. Cisco Sys., Inc.*,
   930 F.3d 1295 (Fed. Cir. 2019) .............................................................. 3, 14, 15, 27

*Two-Way Media Ltd. v. Comcast Cable Commc'ns, LLC*,
   874 F.3d 1329 (Fed. Cir. 2017) ................................................................................. 6

*Ultramercial, Inc. v. Hulu, LLC*,
   722 F.3d 1335 (Fed. Cir. 2013), *vacated on other grounds*, 134 S. Ct. 2870
   (2014) ......................................................................................................................... 8

*Visual Memory LLC v. NVIDA Corp.*,
   867 F.3rd 1253 (Fed. Cir. 2017) .................................................................... 3, 10, 29

PMC's asserted patents cover groundbreaking innovations from the 1980s addressed to multimedia signal processing techniques for the control of video displays and the coordination of video content. In making its argument that these patents are ineligible, and that the question of ineligibility can be answered in Netflix's favor on the bare pleadings, Netflix disregards elements of the claims at issue; ignores *two* separate federal court decisions finding PMC's patents *eligible*, including the '217 at issue here; glides past the technological improvements that the claims addressed; and glazes over almost entirely the fact-intensive question of whether the claimed inventions were "routine and conventional" in 1981 or 1987 -- even ignoring, except buried in a string citation, the Federal Circuit's path-marking decision in *Berkheimer v. HP*, 881 F.3d 1360 (Fed. Cir. 2018), which was a focus of PMC's pre-conference submission to this Court.

Instead, Netflix does precisely what the Supreme Court and Federal Court have told litigants not to do. It guts the claims in order to draw wildly inappropriate analogies in the hunt for an "abstract" idea. On Step One of the eligibility inquiry, Netflix compares these control systems patents to, for example, a lawyer's updating a manual, skipping over pages in a child's book, or a museum's posting a sign on an exhibit. *But see Alice Corp. Pty. v. CLS Bank Int'l*, 134 S. Ct. 2347, 2354 (2014) (warning that an expansive concept of ineligible subject matter might "swallow all of patent law," because "[a]t some level, all inventions embody, use, reflect, rest upon, or apply laws of nature, natural phenomena, or abstract ideas," quoting *Mayo Collaborative Servs. V. Prometheus Labs., Inc*., 132 S. Ct. 1289, 1293 (2012)). Even a cursory review of the claims shows that they are directed to specific technological improvements, including particular methods of requesting processor operating instructions and then using those instructions to decode individualized media ('344); specific methods of generating and using control signals associated with television programming to detect and skip an incomplete television image ('528); and specific

1

methods of generating and receiving multiple subsets of media signals containing unique identifiers used to combine multiple forms of media into a coordinated media presentation ('217).

Step Two of the *Alice* test is fatal to Netflix's Motion. Step Two asks "whether a claim element or combination of elements is well-understood, routine and conventional to a skilled artisan in the relevant field." *Berkheimer*, 881 F.3d at 1368. Importantly, the non-conventional nature of the claims are measured against the technology in existence on the patents' priority dates. Not only does Netflix ignore its factual burden to show that the claim elements in *combination* are well-understood, routine, and conventional, but Netflix compares the individual claims to *present-day* technology. PMC's patents represented a sea change in enhanced video technology in 1980s, which Netflix completely disregards in its application of Step Two.

Netflix also ignores the standards applicable to the pleadings stage. Patent ineligibility is a *defense* that Netflix bears the burden to plead and to prove by clear and convincing evidence. But at this threshold stage, all of PMC's factual allegations must be taken as true, with every inference made in PMC's favor. Since PMC has alleged that its patents describe inventive concepts that are far from conventional in the 1980s, it is thus impossible for Netflix to meet its burden at the pleadings stage. Assuming this Court even reaches Step Two, the appropriate thing to do is to deny Netflix's motion and defer resolution of these issues until summary judgment or trial, when the Court can address them with the benefit of a full factual record. Netflix's motion should be denied.

I.     **The *Alice* Framework in the Rule 12 Context.**

         a.      *Alice - Step One*

Netflix's motion elides many of the instructions laid down by the Federal Circuit concerning Step One. The inquiry is "whether the claims . . . focus on a specific means or method that improves the relevant technology or are instead directed to a result or effect that itself is the

abstract idea and merely invoke generic processes and machinery." *McRO, Inc. v. Bandai Namco Games America Inc*., 837 F.3d 1299, 1314 (Fed. Cir. 2016). Step One thus requires the Court to determine whether each patented claim is directed to an "abstract idea," *i.e.*, an "idea of itself." *See Alice*, 134 S. Ct. at 2354. The question is not whether the claims merely "involve" or "implicate" some abstract concept. *Id.* ("[A]n invention is not rendered ineligible for patent simply because it *involves* an abstract concept."). Instead, the inquiry is whether the claims provide a specific improvement, regardless of whether the claims contain some abstract ideas. *Visual Memory LLC v. NVIDA Corp*., 867 F.3rd 1253 (Fed. Cir. 2017) ("[T]the plain focus of the claims is on an improvement to computer functionality itself….").

Despite what Netflix suggests, the Federal Circuit confirmed the Step One "specific improvement" test several times in the past year alone. *Contrast* Mot. at 14 *with e.g.*, *CardioNet, LLC v. InfoBionic, Inc*, 955 F.3d 1358, 1370 (Fed. Cir. 2020) ("We held under *Alice* step one that the [eligible] claims were directed to a specific asserted improvement…"); *SRI Int'l, Inc. v. Cisco Sys., Inc*., 930 F.3d 1295, 1303 (Fed. Cir. 2019) ("Instead, the [eligible] claims are directed to an improvement in computer network technology."); *Koninklijke KPN N.V. v. Gemalto M2M GmbH*, 942 F.3d 1143, 1153 (Fed. Cir. 2019) ("[C]laims are not directed to an abstract idea because they sufficiently capture the specific asserted improvement…").

Since "all inventions at some level embody . . . abstract ideas," every invention can be described at such a high level of abstraction in order to manufacture a seemingly ineligible claim, as Netflix has attempted here. *Enfish, LLC v. Microsoft Corp.*, 822 F.3d 1327, 1337 (Fed. Cir. 2016) ("However, describing the claims at such a high level of abstraction and untethered from the language of the claims all but ensures that the exceptions to § 101 swallow the rule."); *see also IBM v. Priceline Grp. Inc*., No. 15-137-LPS-CJB, 2016 U.S. Dist. LEXIS 18660, *20-21, *50-51

(D. Del. Feb. 16, 2016) (denying motion to dismiss because, inter alia, "Defendants' articulation does not capture the true character of the [claims]" and is "an overly broad assertion as to what is . . . at the heart of the patent's claims"). It is imperative to consider the actual claim language and describe the invention at the correct level of abstraction in order to properly consider the specific solutions contained in the claims.

Recent Federal Circuit cases require courts to look beyond oversimplifications and to the claim's *specific way* of performing an alleged abstract concept. For example, in *Core Wireless Licensing S.A.R.L. v. LG Electronics, Inc.*, 880 F.3d 1356 (Fed. Cir. 2018), the court analyzed two patents involving display interfaces providing "[a]n application summary window" to display "a limited list of common functions and commonly accessed stored data which itself can be reached directly from the main menu listing some or all applications." *Id.* The defendant pushed a gross simplification of the patent: the abstract idea of an index providing a summary of information. *Id.* at 1361. The court began its analysis with the reminder that "at step one, we must articulate what the claims are directed to with *enough specificity* to ensure the step one inquiry is meaningful." *Id*. In turn, the court rejected the defendant's oversimplification and recognized that even though the claims involved "the generic idea of summarizing information," they were "directed to a *particular manner* of summarizing and presenting information," and were thus a sufficiently "specific improvement over prior systems" *Id.* at 1362-63.

The "summary window" claims met the "particular manner" requirement purely because the claims stated, "an application summary that can be reached directly from the menu," "each of the data in the list being selectable to launch the respective application and enable the selected data to be seen within the respective application," and that the summary window "is displayed while the one or more applications are in an un-launched state" *Id.* The court reasoned those simple

4

"limitations disclose a specific manner of displaying a limited set of information to the user, rather than using conventional user interface methods to display a generic index on a computer."

Similarly, the Federal Circuit has further clarified the "improvement over prior systems" standard and explained a claim is not unacceptably abstract merely because it involves a prior art technology or because the specific technological improvement is untethered to physical hardware. *In Uniloc USA, Inc. v. LG Elecs. USA, Inc*., 957 F.3d 1303 (Fed. Cir. 2020), LG challenged a Bluetooth-related invention as abstract. *Id.* at 1305. Notably, while the invention was created for use in Bluetooth, the claim language was far broader. The representative claim stated: "A primary station for use in a communications system comprising at least one secondary station, wherein means are provided for broadcasting a series of inquiry messages, each in the form of a plurality of predetermined data fields arranged according to a first communications protocol, and for adding to each inquiry message prior to transmission an additional data field for polling at least one secondary station." Netflix argues here that eligible claims *must* (1) omit all results-oriented language, (2) expressly identify the improvement in the claim language, (2) link the improvement to non-conventional hardware, and (4) be devoid of prior art methods. Netflix's argument runs head first into the Federal Circuit's decision in *Uniloc*.

The court held the claims were sufficiently directed to an improvement in technology and therefore not abstract. The court identified the additional data field in the inquiry message as an improvement that resulted in the "reduction of latency experienced by parked secondary stations in communication systems" because "[t]he additional data field enables a primary station to simultaneously send inquiry messages and poll parked secondary stations." *Id.* at 1307–08. The claims "are directed to a patent-eligible improvement to computer functionality." *Id.* at 1307.

LG made all the same arguments raised now by Netflix and the court rejected each of them.

Like Netflix here, *e.g.* Mot. at 10, LG argued the claim language was "not sufficiently directed to this purported improvement" of optimizing network capacity and reducing latency. *Id.* at 1308. LG accused Uniloc of "'using result-based functional language' and generic Bluetooth components. LG therefore contends that the district court correctly analogized to the abstract 'data manipulation' claims we held ineligible in prior cases." *Id.* The Federal Circuit wholly rejected these arguments. *Id.* ("We do not agree."). In doing so, the court expressly rejected the spin Netflix places on *Two-Way Media Ltd. v. Comcast Cable Commc'ns, LLC,* 874 F.3d 1329 (Fed. Cir. 2017). Mot. at 8, 10. While some of *Two-Way Media*'s language could be broadly—and improperly— read to bar claims for merely using certain "results-oriented" words, *Uniloc* cabined *Two-Way Media* to cases in which claims *only* relied on "results-oriented" words and did not connect to the alleged improvement. *Id.* at 1308 ("Two-Way Media argued that the claims solved data transmission problems, including load management and bottlenecking, but the claimed method was not directed to those improvements."). Regardless of the language used, a claim is patent eligible if there is an identifiable "improvement to functionality."

LG also argued—as Netflix does on page 29—that the identifiable improvement needed to be expressly mentioned in the claim language itself. Here too, the Federal Circuit flatly rejected this interpretation of prior cases, stating: "To the extent LG argues that the claims themselves must expressly mention the reduced latency achieved by the claimed system, LG is in error. Claims need not articulate the advantages of the claimed combinations to be eligible." *Id.* at 1309.

Finally, like Netflix, *e.g.* Mot. at 16 & 23, LG also contended that patent-eligible claims could not be based on conventional communication systems and that the relevant technological improvement needed to be defined by reference to novel physical components in the claim. Yet again, the court succinctly rejected these positions, stating, "[t]he claimed invention's

compatibility with conventional communication systems does not render it abstract. Nor does the fact that the improvement is not defined by reference to 'physical' components. To hold otherwise risks resurrecting a bright-line machine-or-transformation test, or creating a categorical ban on software patents." *Id.* (internal citations omitted).

Ultimately, all of the issues raised by LG—and now Netflix—were irrelevant because the claim included "a **specific improvement in the functionality** of the communication system itself, namely the reduction of latency experienced by parked secondary stations." *Id.* (emphasis added). The court determined "[t]his is sufficient to pass muster under Alice step one." *Id.*

        b.     *Alice - Step Two*

Only if an invention is directed to an abstract idea under Step One does a court reach Step Two, which is satisfied when the claim limitations "involve more than performance of well-understood, routine, and conventional activities previously known to the industry." *Berkheimer*, 881 F.3d at 1367. Individual claim elements or a combination of elements will render an abstract idea patentable where they result in a "non-conventional and non-generic arrangement of known, conventional pieces." *Bascom Glob. Internet Services, Inc. v. AT&T Mobility LLC*, 827 F.3d 1341, 1350 (Fed. Cir. 2016). In *Cellspin Soft, Inc. v. Fitbit, Inc.*, 927 F.3d 1306 (Fed. Cir. 2019), the Federal Circuit emphasized this, noting that even where a claim recited well-known technologies (there, Bluetooth), the inventive combination of devices utilizing that technology satisfied Step Two: "[E]ven assuming that Bluetooth was conventional at the time of these inventions, implementing a well-known technique with particular devices in a specific combination, like the two-device structure here, can be inventive." *Id.* at 1318. The Court ultimately held the patents "recite a specific, plausibly inventive way of arranging devices and using protocols rather than the general idea of capturing, transferring, and publishing data." *Id.* at 1319.

But the ultimate question remains whether, in light of all the facts presented in the case, the claimed invention is "well-understood, routing and conventional to a skilled artisan at the time of the patent." *Berkheimer*, 881 F.3d at 1369. The Federal Circuit emphasized the wide-ranging factual nature of this inquiry, observing that it "goes beyond what was simply known in the prior art," because "the mere fact that something is disclosed in a piece of prior art, for example does not mean it was well-understood, routine, or conventional," and the court noted the inquiry "might sometimes overlap with other "fact-intensive inquires like novelty." *Id*. at 1368. Further the *Berkheimer* stressed that the time frame a court is to consider is "at the time of the patent." *Id*. at 1369. As the complaint alleges, and the evidence will show, PMC's claims were not "routine" or "conventional," especially in 1981 or 1987, but rather were ahead of their time in demonstrating the implementation of technologies that are now, decades later, commonplace.

    c.  <u>Burden of Proof</u>

While it ignores the issue entirely in its brief, there is no question that the defense of patent ineligibility is Netflix's to plead and prove by clear and convincing evidence. *See, e.g., Berkheimer*, 881 F.3d at 1368; *Aatrix Software, Inc. v. Green Shades Software, Inc.*, 890 F.3d 1354, 1356 (Fed. Cir. 2018). For purposes of a Rule 12(c) challenge, this means that the issue can only be resolved in Netflix's favor if the factual allegations, taken as true, *prove* Netflix's defense as a matter of law, and no other facts pertinent to the inquiry could be presented at summary judgment or trial that would lead to an outcome in PMC's favor. *See, e.g., MyMail, Ltd. v. ooVoo, LLC*, 934 F.3d 1373, 1379 (Fed. Cir. 2019). PMC itself has no burden to establish eligibility.

While eligibility is ultimately a question of law, *Alice* "is rife with underlying factual issues." *Ultramercial, Inc. v. Hulu, LLC*, 722 F.3d 1335, 1339 (Fed. Cir. 2013), *vacated on other grounds*, 134 S. Ct. 2870 (2014); *Berkheimer*, 881 F.3d at 1368 ("the Supreme Court recognized

that in making the § 101 determination, the inquiry 'might sometimes overlap' with other fact-intensive inquiries like novelty under § 102"). The Federal Circuit determined that the Step Two conventionality inquiry is entirely factual. *Aatrix*, 882 F.3d at 1128 ("Whether the claim elements or the claimed combination are well-understood, routine, conventional is a question of fact.").

Here, those Step Two fact issues would include at least the following: what was the state of the art in 1981 or 1987 (the effective filing dates of the asserted patents) and what was well-understood, routine, and conventional activity previously engaged in by persons of ordinary skill in the art at the relevant time. On every *Alice* fact issue, this Court must take as true at the pleadings stage every allegation made by PMC. *Nat. Alternatives Int'l, Inc. v. Creative Compounds*, LLC, 918 F.3d 1338, 1349 (Fed. Cir. 2019) ("Given that this is the pleading stage, we would have to accept this statement as true even if it were just an allegation in the pleadings."); *Cellspin*, 927 F.3d at 1319 ("Cellspin's asserted claims do precisely that, at least based on the allegations we must accept as true at this stage. In particular, they recite a specific plausibly inventive way of arranging devices and using protocols rather than the general idea of capturing, transferring, and publishing data."). Moreover, the complaint is not the only source of facts that must be taken as true. "The sources properly considered on a motion to dismiss" include "the complaint, the patent, and materials subject to judicial notice." *Aatrix*, 882 F.3d at 1128.

Recognizing that the Federal Circuit has stated "patentees who adequately allege their claims contain inventive concepts survive a § 101 eligibility analysis," Netflix tries to ease its uphill climb by loading up the word "adequately" with as many irrelevant requirements as Netflix can find. Mot. at 6 (citing *Aatrix*, 882 F.3d at 1126-27).

For the first "pleading characteristic," Netflix slices up Step Two language from an opinion laying out the *Alice* framework, despite the citation's being unrelated to the factual *adequacy* of

pleadings that must be taken as true in a Rule 12 context. Mot. at 6. For the second "pleading characteristic," Netflix cites *DDR Holdings, LLC v. Hotels.com, L.P.* (a case that rejected a §101 challenge), despite its involving a post-judgment motion and said nothing about the sufficiency of pleading stage allegations. *See* 773 F.3d 1245 (Fed. Cir. 2014). *DDR* also undercuts Netflix's claim that an inventive concept cannot exist in an invention that uses generic computer equipment. *Contrast* Mot. at 6 *with Visual Memory*, 867 F.3d at 1262 ("Nor is the '740 patent's use of conventional computer components, by itself, fatal to patent eligibility where the claims are directed to an improvement in the functioning of a computer."). For the fourth alleged characteristic, Netflix cites *Automated Tracking Sols., LLC v. Coca-Cola Co.*, 723 F. App'x 989, 995 (Fed. Cir. 2018) to suggest a Step Two inventive concept must be based on the pleadings. The court made no such statement. Instead, *in the next paragraph* after Netflix's citation, the court looked to the patent specification itself. *Id.*

While Netflix searches far and wide for a definition of "adequately allege," Netflix ignores the definition provided by the *Aatrix* Court itself. Just a paragraph below the language quoted by Netflix, the Federal Circuit approved of a complaint that "describes the development of the patented invention, including the problems present in prior art computerized form file creation. It then presents specific allegations directed to improvements and problems solved by the Aatrix patented inventions." *Aatrix Software, Inc. v. Green Shades Software, Inc.*, 882 F.3d 1121, 1127 (Fed. Cir. 2018). The court also approved the low level of detail in the complaint, stating: "The complaint alleges that the claimed software uses less memory, results in faster processing speed, and reduces the risk of thrashing which makes the computer process forms more efficiently. These allegations suggest that the claimed invention is directed to an improvement in the computer technology itself…". *Id.* at 1127.

10

**II.**    **<u>Netflix's Use of Incomplete, Cherry-Picked Claims Warrants Denial of Its Motion</u>**

Netflix's motion should be denied because it has failed to establish that the 52 asserted claims fail *Alice*. Instead, Netflix has cherry-picked four claims from the three asserted patents and accorded them cursory treatment. Netflix asserts that these four claims are "representative" of the others, but provides no analysis as to why the four are equivalent in scope with the other claims. Netflix ignores the numerous material differences that exist among the claims.

Because "each claim in a patent is presumptively different in scope," *RF Del., Inc. v. Pac. Keystone Techs., Inc*., 326 F.3d 1255, 1263 (Fed. Cir. 2003), it is Netflix (and not PMC) who must explain why Netflix's chosen claims are truly representative of all of the asserted claims. Netflix failed to satisfy that burden. Netflix's sweeping motion thus "amounts to an impermissible bypass of the required claim-by-claim analysis. . . . Moreover, [Netflix's] position runs counter to the codified presumption that each claim of a patent (whether independent, dependent, or multiple dependent form) shall be presumed valid independently of the validity of other claims." *Exergen Corp. v. Kaz USA, Inc*., No. 13-10628-RGS, 2015 WL 8082402, *5 (D. Mass. Dec. 7, 2015). Whatever the merits of Netflix's cursory treatment of the four challenged claims—and even more superficial treatment of dependent claims—its Motion provides no basis to invalidate the rest.

**III.**    **<u>Netflix Is Not Entitled To Judgment On The Pleadings As To The '344 Patent</u>**

Netflix oversimplifies the '344 invention—at Exh. A—and ignores claim language so that it may argue ineligibility. The '344 invention established a method of utilizing—and overcoming—a receiver's limited resources, such as memory, in order to allow for the provision of an infinite number of programs selected specifically by a user. The '344 invention is not merely a software update, as Netflix would have this Court believe.

Prior to the '344 invention, receivers were limited to the functionality that existed at the

time of manufacture. This presented a significant problem for multimedia transmission networks in the form of receivers with non-uniform software. Dkt. 1 at ¶16. More importantly for enhanced video functionality, the static nature of the software and hardware limited a receiver's ability to engage with new video features and decode new media content. *Id.* The '344 invention overcame this significant technological limitation through a method that generates and sends a request for a set of instructions via a network connection of a processor operating under the control of another set of instructions. In response to the request, the set of instructions are transmitted to the receiver station where they are received and executed to enable the receiver station to receive video media.

> a.     *Alice* - Step One

Claim 1 of the '344 contains an "improvement to functionality" and is thus not impermissibly abstract. In fact, the '344 invention's contribution to functionality is so significant that the functionality did not previously exist at all. "This is sufficient to pass muster under Alice step one." *Uniloc*, 957 F.3d at 1309.

Like the identified improvements in the *Uniloc* patent that called for two messages in a single transmission to maximize performance, the '344 calls for each receiver to execute two categories of operating instructions—one permanent and one upgradeable—so receivers could maximize limited storage space and avoid being limited to the media content available when the receiver was manufactured. Thus the '344 invention ensured for the first time a receiver could dynamically communicate with an external source to request signals necessary to access selectable content, which amounts to "specific improvement in the functionality of the communication system itself." *Uniloc*, 957 F.3d at 1309; Dkt. 1 at ¶ 16. Netflix argues on pages 14-15 of its Motion that the improvements must be stated in the claims themselves, but the Federal Circuit has rejected that. *Id.* ("Claims need not articulate the advantages of the claimed combinations to be eligible.").

The '344 invention is also akin to the eligible claims in *Core Wireless*. There, the court addressed claim limitations stating: "an application summary that can be reached directly from the menu," "each of the data in the list being selectable to launch the respective application and enable the selected data to be seen within the respective application," and that the summary window "is displayed while the one or more applications are in an un-launched state." 880 F.3d at 1362. The '344 also includes similarly detailed limitations: "reprogramming a receiver station that **receives television or radio programming**," "executing said first operating instructions at said processor to perform a first function, said first operating instructions **being different** from permanent operating instructions" "receiving second operating instructions **different** from both said permanent operating instructions… **in response to said step of promulgating said query**" "wherein said first and said second operating instructions **do not include audio data, video data, image data**," "performing a second function by executing said **second operating instructions [for] controlling reception of signals required to output a video programming transmission**." '344 at 285:56-286:21 (emphases added). Like the claims in *Core Wireless*, the '344's "limitations disclose a specific manner of [obtaining] a limited set of information [for] the user, rather than using conventional [media transmission] methods to display a generic information on a computer." *Id.* Accordingly, the '344's claims "recite a specific improvement over prior systems" by creating the ability for media display units to reprogram themselves with instructions that controlled video output, something truly unheard of in the 1980s. *Id.* at 1363.

Not surprisingly, Netflix insists the Court should ignore all the points that are harmful to it, saying: "The results of the step one analysis are not impacted by the fact that PMC's Complaint identifies purported '[a]dvantages of the '344 invention over prior art technologies.'" Mot. at 14. Not only is that false, but the Federal Circuit has consistently directed courts applying Step One to

determine whether claims are sufficiently directed to an improvement in functionality. *See, e.g.*, *CardioNet*, 955 F.3d at 1370 ("We held under *Alice* step one that the [eligible] claims were directed to a specific asserted improvement…"); *SRI Int'l*, 930 F.3d at 1303 ("Instead, the [eligible] claims are directed to an improvement in computer network technology.").

Netflix tries to dodge the '344's obvious improvement to functionality by recasting Claim 1 at such a high level of generality—"updating operating instructions"—to render it unrecognizable. Netflix's strategy is precisely the misapplication of *Alice* the Supreme Court warned about. *Alice*, 134 S. Ct. at 2354 (if successful, it will "swallow all of patent law," because "[a]t some level, all inventions embody . . . or apply . . . abstract ideas"). Using this overgeneralization, Netflix analogizes the '344 to abstract human behavior. But the obvious complexity of the '344 results in a clunky analogy about Bates labels and subpoenas so convoluted that Netflix is forced to front the analogy's weakness and note it has been applied "more granularly" than in other cases. Mot. at 13. Even if one were to entertain Netflix's analogy, are lawyers who look up rules of procedure while preparing subpoenas really concerned about overcoming limited computer resource capacity set at the time of manufacture intended to send and receive code related to displaying personalized media content? Netflix's "updating operating instructions" generalization and analogy are ultimately unpersuasive because they outright ignore numerous claim elements, including (1) the receiver's running both the original operating instructions and upgradeable instructions, (2) the receiver's initiating the process of receiving new upgradeable instructions, (3) the upgradeable instructions' lacking video and audio data, and (4) the upgradeable instructions' being used to control, receive, process, and output video signals.

Netflix also offers a superficial comparison between the '252 PMC patent in *Personalized Media Commc'ns, LLC v. Amazon.com, Inc.*, 161 F. Supp. 3d 325 (D. Del. 2015), a decision that

was issued before a number of the Federal Circuit's decisions clarifying the standards applicable to both Steps One and Two of the *Alice* inquiry, including *Uniloc*, *Core Wireless, Cellspin, CardioNet*, *SRI Int'l*, *Koninklijke KPN*., *Berkheimer*, and *Aatrix*, **and** two other federal court decisions upholding patents in the PMC portfolio.[1]

Relying heavily on *Amazon*, Netflix suggests the '344 must be abstract because there is some overlap in language. But Netflix's table does not help its case. Instead, the table makes the differences between the two patents all the more obvious. For example, in row 3, the '344 describes a process of running two sets of operating instructions at once: one permanent and one upgradeable. Row 3 then details the steps through which the upgradeable instructions are changed. The '252 has no analogous functionality. In Row 4, Netflix has placed an "n/a" in the '252 column while the '344 column lays out how a device can "generat[e] a query" "comprising a request by said receiver station for reprogramming." And the last four rows show that the upgradeable operating instructions in the '344 are used to receive and display **video programming** while the '252 *only* operating instructions are not used specifically for receiving video. In other words, the flow of information—not limited to any particular type—in the '252 is focused entirely on the receiver station and only involves updates being sent *to* the receiver station (by an unnamed source).That is not surprising given the '252 was directed to the problem of standardizing the operating system instructions on multiple networked devices, and how to ensure only the correct software was installed on a given machine. In contrast, the '344 is directed to an entirely different type of receiver station operating in an entirely different system. The '344 receiver station runs two different types of instructions and on its own can request new upgradeable instructions so that one station can decrypt and display additional media presentations. These are different patents with

---

[1] Netflix continues to omit that the summary affirmance of *Amazon* was without opinion under its local circuit Rule 36. It thus has no precedential value and is not binding on this Court. *See* CTAF Rule 36(a); CTAF Rule 32.1.

different functionality, different purposes, and different improvements over prior art.

Netflix ignores the requirement that at Step One the Court is to consider the claim as a whole. *Enfish*, 822 F.3d at 1335 ("B]ased on whether their character as a whole is directed to excluded subject matter."). Only by shutting its eyes to the totality of the claim limitations can Netflix deny the '344 marked a major improvement in the development of multimedia delivery. "This is sufficient to pass muster under Alice step one." *Uniloc*, 957 F.3d at 1309. Thus, the '344's subject matter is patent eligible and the Court need not reach Step Two.

b.    *Alice - Step Two*

Netflix's Step Two analysis not only incorrectly applies a present-day perspective to the question of conventionality, but outright ignores the rule that at the pleadings stage this Court must consider PMC's allegations as true. Netflix makes a few broad statements about the state of the art and simply concludes the '344 was well-understood. But Netflix fails to explain that whether an invention was well-understood or conventional must be determined *as of the patent's priority date*. *Berkheimer*, 881 F.3d at 1369 ("Whether something is well-understood, routine, and conventional **to a skilled artisan at the time of the patent** is a factual determination.") (emphasis added). Even then, the mere disclosure of a technology in the prior art does not necessarily render it well-understood, routine, and conventional. *Id.* Applying Step Two to the '344 requires looking at what was conventional about remote updates for video receivers in *1981*. Netflix has not done that.

Even if Netflix had properly applied the Step Two test, Netflix's factual assertions would still need to be ignored, given that Step Two is a fact issue and the Court must take as true all facts in the complaint and patents. *Aatrix*, 882 F.3d at 1128 ("Whether the claim elements or the claimed combination are well-understood, routine, conventional is a question of fact."). Put simply, Netflix has no record upon which to challenge Step Two.

16

Conversely, there are facts disclosed in PMC's complaint that would require the Court to deny Netflix's motion. Like the complaint in *Cellspin*, 927 F.3d 1306, PMC's complaint has sufficiently "alleged that its implementation of [remote updates to allow receivers to select and display personalized media], was inventive." Paragraph 16 of the complaint states:

> This invention was made in 1981 and represented a significant advance over what was conventional then. Conventional systems of 1981—typically a television and cable box—did not have the capacity for remote reprogramming. In contrast, the '344 invention generates and sends a request for a set of instructions via a network connection of a processor operating under the control of another set of instructions. In response to the request, the set of instructions are transmitted to the receiver station where they are received and executed to enable the receiver station to receive video media.

PMC's comparison of the invention to prior art is just as detailed as the complaint in *Cellspin*. The complaint in this case even provided a list of advantages associated with the non-conventional methods claimed in the '344: "Advantages of the '344 invention over prior technologies include, but are not limited to: fully automated updates to receiver station software; extension of receiver station operating life; standardization of receiver station software within a network; and the remote addition of new features and capabilities to a receiver station." Dkt. 1 at ¶ 16.

The statements in the patent itself—which must also be taken as true—further support rejecting Netflix's position that the '344 was well-understood, routine, and conventional. *Aatrix*, 882 F.3d at 1128 (recognizing facts interpreted in plaintiff's favor at the pleading stage include those in "the complaint, the patent, and materials subject to judicial notice"). The Federal Circuit recently rejected an eligibility challenge on Step Two *on summary judgment* based on statements in the patent specification. *Berkheimer*, 881 F.3d at 1370. In *Berkheimer*, the defendant challenged the eligibility of a patent directed to a process of limiting redundancies in information entered into a database. *Id.* While the court agreed the subject matter was abstract, it determined there was a fact issue under Step Two precluding summary judgment. *Id.* The court noted: "the specification

states that storing object structures in the archive without substantial redundancy improves system operating efficiency and reduces storage costs. It also states that known asset management systems did not archive documents in this manner." *Id.* By identifying a benefit of the invention and the fact that the invention was not previously known, the patent created a fact issue on Step Two. *Id.*

If the claims at issue in *Berkheimer* could not be held ineligible even on summary judgment, the claims here cannot be invalidated on the bare pleadings. The '344 states the invention allows for a "for wide variation in individual station apparatus in order to provide individual subscribers the widest range of information options at the least cost in terms of installed equipment." '344 at 9:13-16. It further states that the invention creates flexibility for "expanding the capacity of installed systems by means of transmitted software and for altering installed systems in a modular fashion by adding or removing components." *Id.* at 17-20. And these benefits did not exist in prior art systems; they were invented precisely to "overcome … limitations of the prior art." *Id.* at 6:25-26. Indeed, it was unheard-of in the 1980s to have a media display unit that could reprogram itself with operating instructions that controlled video output. As in *Berkheimer*, the assertions in the patent itself prevents Netflix from satisfying Step Two.

### A.   Dependent Claim 2 is Equally Eligible

In a single paragraph, Netflix proclaims Dependent Claim 2 is abstract. Netflix's conclusory argument rests on the erroneous analysis of the '344 independent claim. But dependent Claim 2 is actually narrower than Claim 1, adding the following limitations: (i) "storing a data record evidencing said step of processing or outputting" and (ii) "transferring said data record from said receiver station data storage device to a data collection station in said external data network through said data network connection." Since Claim 1 is eligible under either Step One or Step Two, the narrower Dependent Claim 2 is unquestionably eligible.

Additionally, Netflix ignores the fact that in 1981, televisions and computers were separate devices and that televisions had no capability of saving records of updates, let alone sending those updates to an external device via the same data network connection that was used to request reprogramming. Even if Netflix is correct on Step One, Dependent Claim 2 as an ordered combination provides an inventive concept that was not well-understood, routine, or conventional in 1981. PMC has alleged as much in the Complaint and the Patent. *See, e.g.*, '344 at 1:55-57 ("Today great potential exists for combining the capacity of broadcast communications media to convey ideas with the capacity of computers to process and output user specific information.").

**IV.**  **Netflix Is Not Entitled To Judgment On The Pleadings As To The '528**

The '528 claims are addressed to a specific problem of processor-enabled television receiver stations in a network. Exh. B. Stations have different processing capabilities, creating the need for a process to handle situations in which a station does not have a generated video image ready in time for presentation. To address this problem, claim 21 of the Patent teaches a "method of controlling the display of television programming at a receiver station" by "determining the absence of complete generated television image data by processing information at least one of included in and received with said television signal" and "determining a location of subsequent information for advancing to based on said step of determining the absence of complete generated television image data" and ensuring the incomplete image data is not displayed. Claim 32 provides a method for creating and transmitting the control signals receivers process to identify incomplete video data. Prior to the '528, television receiver stations were unable to skip over incomplete video data, resulting in partial display, errors or glitches for users. Thus the '528 represented a significant advancement over conventional technology systems of that time. Dkt. 1 at ¶18.

      *a.*    *Alice – Step One*

Yet again, Netflix tries to shoehorn this case into the *Amazon* decision. The only thing that

is similar between the '528 claims and the '587 in *Amazon*, however, is that they both *involve* "missing information." Netflix's chart -- with its supposedly alike cells that have dramatically different text and its section headers that cut across only a subset of columns -- illustrates as much. Mot. at 19. But case after case makes clear that eligibility determinations require Netflix to engage with the steps of the claim language, not a reconstructed overgeneralization. *Enfish*, 822 F.3d at 1337 ("However, describing the claims at such a high level of abstraction and untethered from the language of the claims all but ensures that the exceptions to § 101 swallow the rule."); *Core Wireless*, 880 F.3d at 1361 ("[A]t step one, we must articulate what the claims are directed to with *enough specificity* to ensure the step one inquiry is meaningful.").

Only through such overgeneralizations can Netflix claim the '528 fails Step One. Netflix summarizes *two* separate claims in the '528 down to the process of skipping over missing information, like skipping over repeating music on a scratched CD. Mot. at 21. Thus, according to Netflix, the invention is abstract because skipping over something is abstract. But Netflix's overgeneralizations have jettisoned defining characteristics of the claims and therefore fail to analogize to the crux of the '528. If a record or CD is scratched, the playback will repeat, produce a pop, or another effect. There is no detecting, preventing the output, or determining a subsequent location to which to advance. The '528 is not about automating jumping over the scratched portion of a skipping CD, it is detecting—indeed, anticipating—a future "skip" before it even occurs and ensuring the end user never knows it is there.

Even if Netflix were correct that the invention can be reduced to "skipping over information," it would not automatically render the '528 abstract. When the Federal Circuit concluded in *Enfish* that certain claims directed to self-referential tables in databases were not abstract, it explained that "the first step in the *Alice* inquiry in this case asks whether the focus of

the claims is on the specific asserted improvement in computer capabilities (*i.e.*, the self-referential table for a computer database) or, instead, on a process that qualifies as an 'abstract idea' for which computers are invoked merely as a tool." 822 F.3d at 1335-36. Under Netflix's reasoning, because the *Enfish* claims related to a database, those claims were drawn to the abstract idea of organizing data. *Enfish* rejected this approach, emphasizing instead that the claims were "directed to a specific improvement to the way computers operate, embodied in the self-referential table." *Id.* at 1336.

*Enfish* also forecloses Netflix's erroneous argument that any "intangible" invention is automatically abstract. Mot. at 21. *Enfish* expressly rejected the notion that an improvement must be defined by reference to "physical" components. *Enfish*, 822 F.3d at 1339. "To hold otherwise risks resurrecting a bright-line machine-or-transformation test, or creating a categorical ban on software patents." *Id. See also Uniloc*, 957 F.3d at 1309 (reaffirming same). Moreover, Netflix's description of the invention as an intangible is inaccurate. While there are intangible *aspects* to the invention, as a whole it requires numerous tangible components in order to function, including a receiver station, a transmitter station, and a monitor.

Ultimately, the Federal Circuit in the past several years has emphasized that claims involving "the generic idea of" some action can still be sufficiently "specific improvement over prior systems" if they are "directed to a *particular manner* of" taking that generic action. *Core Wireless*, 880 F.3d at 1362-63. That is true of the '528, which is directed to a "particular manner" of detecting missing media information and skipping ahead to displayable information. For example, claim 32 recites "transmitting from a transmitter station an information transmission including a television signal" and "generating at least one control signal" to be sent with the television signal to enable the receiver to "determine the absence of complete generated television image data by processing" that control signal and in turn omit the portion of the signal with missing

media. Like the patent in *Core Wireless*, the '528 "limitations disclose a specific manner of [skipping and not] displaying a limited set of information to the user." And PMC has expressly alleged this specific manner "represented a significant advancement over conventional technology systems of that time, which, as a non-limiting example, had no capability to skip the display of incomplete video images." Dkt. 1 at ¶18.

The described claim language not only shows that the '587 Patent in *Amazon* is a poor analog, but that the better comparison to other PMC patents is to the '635 in *Personalized Media Communic'ns, LLC v. Apple Inc*., No. 2:15-CV-1366, 2016 WL 5719701, at *5 (E.D. Tex. Sept. 13, 2016), *report and recommendation adopted*, 215CV01366JRGRSP, 2016 WL 5475798 (E.D. Tex. Sept. 29, 2016). There, the court "found that claim 1 [of the '635] is directed to using a 'control signal' associated with 'digital programming' to 'decrypt programming' 'based on' the 'control signal.'" Based on the claim language and the specification, the court determined "that using a 'control signal' to control decryption improves the way in which 'encrypted digital programming' is delivered," and was thus "not directed to an abstract idea under step one…." Similarly, the '528 claims recite using a "control signal" associated with "television programming" to detect and skip an "incomplete television image" "based on" the "control signal." Like in the '635 claims, "using a 'control signal' to control [detection of incomplete images] improves the way in which '[television] programming' is delivered," and is thus "not directed to an abstract idea under step one…." *Id.* Netflix addresses *Apple* only in one footnote, and there, admits that the '528 "shares some elements" with a claim from yet another patent upheld in *Apple*: claim 39 from the '649. Its only response is to say that the claim "relates to a method for controlling how processing is distributed within a multiprocessor architecture." Mot. at 21 n.4. But that is not what the *Apple* court said; instead, that court held that because the '649 "describes a technological method of

remotely controlling how signal processing works in a receiving device," it was not "directed to" an abstract concept. The same logic would apply to the '528, if not more so.

        b.     *Alice – Step Two*

Netflix's Step Two analysis is entirely superficial. On Step Two, Netflix is required to show that the '528—individually and as an ordered combination—were well-understood, routine, and conventional **to a skilled artisan at the time of the patent**." *Berkheimer*, 881 F.3d at 1369 (emphasis added); *Bascom*, 827 F.3d at 1350 (holding abstract ideas are patentable where they result in a "non-conventional and non-generic arrangement of known, conventional pieces"). Netflix, however, pays lip service to its burden by discussing only the acknowledged conventional aspects of the '528 while ignoring its non-conventional elements. Mot. at 23 (analyzing only "a monitor, a receiver, and a processor"). Netflix can only contest an inventive concept by ignoring claim elements like the use of control signals alongside television signals to allow receivers to hide imperfect media transmissions or the limitations of local processing hardware from end users. Netflix also ignores the fact that the Step Two inquiry is conducted from the perspective of someone in **1987**. Netflix has fallen far short of its burden to show the '528 was well-understood, routine, and conventional to a skilled artisan in 1987.

Additionally, Netflix's Step Two argument hinges on the Court's accepting Netflix's own factual assertions regarding the state of the art in 1987. Of course, at this phase, the Court must accept the facts in the Complaint and patent over any facts asserted by Netflix. *Cellspin*, 927 F.3d at 1319. In addition to the patent, the facts recited in the Complaint make clear that the '528 was not well-understood, routine, or conventional in 1987.

First, PMC alleged the invention did not exist *at all* in prior systems. The Complaint states, "The invention was made in 1987 and represented **a significant advancement over conventional**

**technology systems** of that time, which, as a non-limiting example, had no capability to skip the display of incomplete video images." Dkt. 1 at ¶18. Likewise, the patent discloses the prior art in 1987 had "no capacity for operating on the basis of control signals transmitted to recorder/players at a plurality of subscriber stations." '528 at 5:25-27. Second, the Complaint identifies the benefits of the non-conventional '528 invention. The Complaint explains the invention will ensure the end user does not notice incomplete video images, stating: "If the image is incomplete, the receiver station will prevent the image from being displayed and will automatically advance to subsequent information received with the television signal." Dkt. 1 at ¶18.

*Cellspin* involved similar allegations that defeated a defendant's eligibility challenge at Step Two. *Cellspin*, 927 F.3d at 1318. There, the plaintiff's complaint alleged an aspect of the claimed invention was "non-existent prior to its inventions." *Id.* at 1317 ("[I]t specifically alleged that 'HTTP transfers of data received over [a] paired wireless connection to web services [were] non-existent' prior to its inventions."). The district court disregarded this allegation "because Cellspin 'fail[ed] to cite to support in the [shared specification]' for its allegations." *Id.* The Federal Circuit reversed, noting that there was no citation requirement for allegations in complaints and that "[t]he district court erred by not accepting those allegations as true." *Id.* at 1318. Here, the Complaint expressly stated that "conventional technology systems of that time … had no capability to skip the display of incomplete video images" in any manner, let alone by processing control signals as disclosed by the '528. Dkt. 1 at ¶ 18. Thus, the Complaint alone is fatal to Netflix's argument that the '528 was well-understood, routine, or conventional as of its priority date.

## A.   The Dependent Claims Are Equally Eligible

Netflix challenges *nine* dependent claims, providing only three paragraphs worth of superficial analysis. Mot. at 23. Netflix has not even attempted to explain how the unaddressed

24

*five* dependent claims are adequately represented by the four it mentioned. That alone is sufficient to deny Netflix's Motion. *Pac. Keystone Techs.*, 326 F.3d at 1263 ("[E]ach claim in a patent is presumptively different in scope."). On the other claims, Netflix contends that they must be ineligible because they feature individually abstract or known technologies. Mot. at 24. Even if Netflix were correct, Netflix only looks at the individual elements and fails to explain why the combination of those elements with the independent claims does not result in an inventive concept. Again, the '528 and Complaint state that in 1987, combining computer and television technologies was not well-understood, routine, or conventional. *See, e.g.*, '528 at 1:57-60 ("Today great potential exists for combining the capacity of broadcast communications media to convey ideas with the capacity of computers to process and output user specific information."); Dkt. 1 at ¶ 18.

**V.      Netflix Is Not Entitled To Judgment On The Pleadings As To The '217 Patent**

The '217 addresses a specific technological problem rooted in signal transmission and processing: correctly identifying different media received in multiple signals to produce a coordinated presentation using two of the received media. '217 at 10:51-11:6; 21:53-22:20 [Exh. C]. This invention was made in 1981 and represented a significant improvement over conventional technology. The advantages of the '217 include, but are not limited to: personalization of media presentations; receiver-controlled reception, identification, and selection of different but related media from separate external sources; and receiver generation of a multimedia presentation through the processing and coordinated display of at least two separate media. Dkt. 1 at ¶15.

         a.      *Alice – Step One*

Netflix buries in a footnote the fact that this exact patent has already withstood eligibility scrutiny *two* times. Mot. at 28 n.5. (citing *Personalized Media Commc'ns, LLC v. Funai Elec. Co.*, No. 2:16-cv-00105, 2017 WL 957719 (E.D. Tex. Feb. 22, 2017), *report and recommendation adopted*, 2017 WL 951860 (E.D. Tex. Mar. 10, 2017) ("*Funai*"); *Personalized Media Commc'ns,*

*LLC v. Samsung Elecs. Am., Inc.*, No. 2:15-cv-1754, 2016 WL 9240544 (E.D. Tex. Sept. 21, 2016), *report and recommendation adopted*, 2016 WL 9274742 (E.D. Tex. Sept. 29, 2016) ("*Samsung*")). Netflix offers no substantive explanation for why these rulings were incorrect, other than to say that in the *Funai* order, the "entire discussion was three sentences long." *Id.* Netflix tries to elide what those three sentences were. The court directly addressed the argument Netflix makes here, and held that "the '217 patent claims address a specific technological problem rooted in signal transmission and processing. Namely, the '217 claims allow correctly identifying the content of different media received in multiple signals to produce a coordinated presentation using two of the received media. *See, e.g.*, '217 Patent, 10:51-11:6; 21:53-22:20." *Funai*, 2017 WL 957719, at *2.

For the other case, *Samsung*, Netflix only says that the court based its §101 denial on the need to conduct *Markman* first. However, Netflix omits that the *Samsung* court did not stop there, but expressly stated that the invention could be eligible if "directed to a technological way of identifying a "set" of signals for coordinated presentation." *Samsung*, 2016 WL 9240544, at *4. This is precisely what the '217 entails: a technological way of correctly identifying the content of different media received in multiple signals to produce a coordinated presentation using two of the received media. '217 at 10:51-11:6; 21:53-22:20. Netflix also ignores that the court resolved Step Two *against* Samsung and in favor of the '217. *Id.* at *4 ("Samsung, however, has not shown that these operations and parts when used in combination fail to disclose an inventive concept. Indeed, the Federal Circuit has held, 'an inventive concept can be found in the non-conventional and non-generic arrangement of known, conventional pieces.'") (citation omitted). Though Netflix tries to downplay it, two decisions have recognized the eligibility of the '217.

Rather than acknowledge and credit the prior rulings on this *exact* patent, Netflix ties itself in knots trying to explain why the '217 is *actually* like an entirely different patent—the '243

Patent—that the *Amazon* court determined involved abstract subject-matter. Mot. at 25. The '217 has significant, functional differences with the '243. The inventions served entirely different purposes, which is helpfully illustrated by Netflix's chart. *Id.* at 25-27. The '243 provided steps for an external data source to transmit data in response to a request from a receiver. A second external data source would send a signal telling the receiver what to do with the data it had previously received. The significant blanks on the '243 side of Netflix's table indicate missing functionality that is present in the '217. That missing functionality is significant. Claim 11 of the '217 discloses a specific method for a receiver to use a predetermined identifier to identify and select a subset of a plurality of signals received from an external source. By contrast, the '243 is not concerned with a predetermined identifier for signal processing, but requires that media is transmitted from a first source that contains no identifiers and is not outputted to a display in any form. In the '217, the receiver collects a plurality of media signals from one or more external sources, uses a predetermined identifier to select and process a subset of the collected media signals, identifies other collected media signals that are not part of the subset, and then outputs two distinct media in a combined presentation that involves the first medium having a predetermined relationship with information based on the second medium.

These distinctions in the '217 are precisely why it is directed to eligible subject matter. They amount to an improvement in network technology that passes muster under Step One. *Uniloc*, 957 F.3d at 1308; *SRI Int'l*, 930 F.3d at 1303 ("Instead, the [eligible] claims are directed to an improvement in computer network technology."). Rather than sending the receiver a combined media presentation, the '217 calls for independent sets of disparate signals and a unique process of combining those signals in a meaningful way at the receiver station. As the Complaint notes, "[t]his invention was made in 1981 and represented a significant advance over what was

conventional then. Advantages of the '217 over prior technologies include, but were not limited to: personalization of media presentations; receiver-controlled reception, identification, and selection of different but related media from separate external sources; and receiver generation of a multimedia presentation through the processing and coordinated display of at least two separate media." Dkt. 1 at ¶15. Just like in *Core Wireless,* even if the '217 involves "the generic idea of [transmitting] information," the claims are "directed to a *particular manner* of [transmitting] and presenting information," and are thus a "specific improvement over prior systems." *Id.* at 1362-63.

Rather than engage with the actual invention, Netflix mounts a defense based on ill-fitting analogies and overgeneralizations. Netflix asserts that the '217 invention is *just* like captioning a newspaper photo. Mot. at 27-28. Are journalists actually concerned about the difficulties involved with receiving disparate subsets of electronic signals and accurately organizing these disparate subsets to interpret and pair them when they describe a photo? Netflix's analogy is akin to analogizing the steps involved in air travel with moving a mug across a table simply because they both involve movement between two points. Netflix's analogy only has a relevance if the '217 is reframed at such a high level of abstraction that its defining details fade away. That is precisely what the Federal Circuit cautioned should not be done. *Enfish*, 822 F.3d at 1337.

Continuing its overgeneralization-based arguments, Netflix again invokes the category of abstract "collection, transfer, and publishing of data" patents and pushes for the '217's inclusion. If Netflix were correct that the use of certain "magic words" would render a patent's subject matter ineligible, then *Uniloc* would have come out differently. But the Federal Circuit made clear that there is no such list of *per se* words that render a patent abstract. *Uniloc*, 957 F.3d at 1308 (distinguishing prior "results-oriented" cases from the patent at issue that used similar language by noting the claims were held ineligible for "using 'result-based functional language' *without the*

28

*means for achieving any purported technological improvement*" and that the "claimed method was not *directed to* those improvements") (emphasis added). Rather, it is the existence of results-oriented language combined with the total absence of any connection between the claim language and an alleged improvement to technology. The eligible *Uniloc* claims added an additional data field before transmission and thus were tied to the improvement of reduced response times. *Id.* at 1308-09. In the same way, the '217 specifies that media contained within a plurality of signals transmitted from one or more external sources can be chosen by a receiver to be played based on matching unique identifiers embedded in the signals, and in turn allows for the improvement of combined media content. This marked a major improvement in the way media content was technically delivered to users. "Like the improved systems claimed in *Enfish*, *Thales*, *Visual Memory*, and *Finjan*, these claims recite a specific improvement over prior systems, resulting in an improved user interface for electronic devices." *Core Wireless*, 880 F.3d at 1363.

      *b.*    <u>Alice – Step Two</u>

Again, at Step Two, it is Netflix's burden to show that the '217 invention was well-understood, routine, and conventional *in 1987*. *Berkheimer*, 881 F.3d at 1369. And Netflix must meet its burden by overcoming the requirement that all facts in the Complaint are accepted as true. *Creative Compounds*, 918 F.3d at 1349. Netflix disregards this requirement and argues the invention was conventional and that the advantages are unrelated to claims. Mot. at 29-30. But Netflix is just arguing the facts. PMC has "made specific, plausible factual allegations about why aspects of its claimed inventions were not conventional." *Cellspin*, 927 F.3d at 1317–18.

First, Paragraph 15 of the Complaint states that the '217 was non-conventional at the time Dkt. 1 at ¶15 ("This invention was made in 1981 and represented a significant advance over what was conventional then."). Paragraph 15 lists the '217's advantages, including, "personalization of

media presentations; receiver-controlled reception, identification, and selection of different but related media from separate external sources; and receiver generation of a multimedia presentation through the processing and coordinated display of at least two separate media." *Id.*

Second, the '217 describes its non-conventional nature and benefits, including:

- "This prior art, too, is limited. It has capacity to monitor only single broadcast stations, channels or units and lacks capacity to monitor more than one channel at a time or to monitor the combining of media." '217 at 4:56-59

- "This prior art, too, is limited. It has no capacity for decrypting combined media programming." '217 at 5:38-40

- "It is the further purpose of this invention to provide means and methods for the automation of ultimate receiver stations, especially the automation of combined medium and multichannel presentations." '217 at 7:22-25

- "Like conventional television, said combined medium transmits the same signals to all subscriber stations. **But unlike conventional television** where each subscriber views only programming viewed by every other subscriber and where said programming is known to and available at the program originating studio, each subscriber of said combined medium views programming that is personalized and private." '217 at 14:53-60 (emphasis added).

Like the plaintiffs in *Cellspin* and *Berkheimer*, PMC has not only alleged specific facts about the non-conventional nature and benefits of the '217, but the patent itself corroborates PMC's allegations. *See Berkheime*r, 881 F.3d at 1370 ("[T]here is at least a genuine issue of material fact in light of the specification regarding whether claims 4–7 archive documents in an inventive manner that improves these aspects of the disclosed archival system."). These allegations—taken as true—and judicially noticeable facts from the patent itself show that in 1981, receivers had no ability to process multiple subsets of signals, process identifiers within those subsets to combine, and overlay disparate media specific to a user. At the pleading phase, this is dispositive of the Step Two issue. Netflix's '217 challenge must be denied.

## CONCLUSION

PMC respectfully submits that Netflix's motion for judgment on the pleadings be denied.

Dated: July 10, 2020                         Respectfully submitted,

                                             By:    /s/ Arun Subramanian

                                                    Arun Subramanian
                                                    New York State Bar No. 4611869
                                                    Tamar Lusztig
                                                    New York State Bar No. 5125174
                                                    Geng Chen
                                                    New York State Bar No. 5377262
                                                    Ravi Bhalla
                                                    New York State Bar No. 5748223
                                                    SUSMAN GODFREY L.L.P.
                                                    1301 Avenue of the Americas, 32nd Fl.
                                                    New York, NY 10019-6023
                                                    Telephone: (212) 336-8330
                                                    asubramanian@susmangodfrey.com
                                                    tlusztig@susmangodfrey.com
                                                    gchen@susmangodfrey.com
                                                    rbhalla@susmangodfrey.com

                                                    Joseph S. Grinstein
                                                    Texas State Bar No. 24002188
                                                    Rocco Magni
                                                    Texas State Bar No. 24092745
                                                    SUSMAN GODFREY L.L.P.
                                                    1000 Louisiana, Suite 5100
                                                    Houston, TX 77002-5096
                                                    Telephone: (713) 653-7820
                                                    Fax: (713) 654-6666
                                                    jgrinstein@susmangodfrey.com
                                                    rmagni@susmangodfrey.com

                                                    Meng Xi
                                                    SUSMAN GODFREY L.L.P.
                                                    1900 Avenue of the Stars, Ste. 1400
                                                    Los Angeles, CA 90067
                                                    Telephone: (310) 789-3100
                                                    Fax: (310) 789-3150
                                                    Email: mxi@susmangodfrey.com

                                                    S. Calvin Capshaw
                                                    Texas Bar No. 03783900
                                                    Elizabeth L. DeRieux
                                                    Texas Bar No. 05770585
                                                    CAPSHAW DERIEUX LLP

114 E. Commerce Avenue
Gladewater, TX 75647
Telephone: (903) 233-4826
ccapshaw@capshawlaw.com
ederieux@capshawlaw.com

Dmitry Kheyfits
New York State Bar No. 4743795
KHEYFITS BELENKY LLP
1140 Avenue of the Americas, 9th Floor
New York, NY 10036
Telephone: (212) 203-5399
Email: dkheyfits@kblit.com

Timothy R. DeWitt (*Pro Hac Vice*)
VA Bar No. 40522
24IP LAW GROUP USA, PLLC
424 Fourth Street, Suite C2
Annapolis, MD 21403
Tel.: (410) 212-2539
Fax: (410) 295-5096
Email: tdewitt@24ipusa.com

*Attorneys for Personalized Media
Communications, LLC*

32

## CERTIFICATE OF SERVICE

I certify that on July 10, 2020, a copy of the foregoing **MEMORANDUM OF LAW IN SUPPORT OF PMC'S OPPOSITION TO NETFLIX, INC.'S MOTION FOR JUDGMENT ON THE PLEADINGS REGARDING THE '217, '344, AND '528 PATENTS** was served on the parties to this action by electronically filing true and correct copies with the Clerk of the Court using the ECM/ECF system which automatically sent notification by e-mail of such filing to the counsel of record.

_/s/ Arun Subramanian_
Arun Subramanian
