# SUSMAN GODFREY L.L.P.

A REGISTERED LIMITED LIABILITY PARTNERSHIP

SUITE 5100
1000 LOUISIANA STREET
HOUSTON, TEXAS 77002-5096
(713) 651-9366
FAX (713) 654-6666
WWW.SUSMANGODFREY.COM

_____

| SUITE 1400 | SUITE 3800 | 32ND FLOOR |
| 1900 AVENUE OF THE STARS | 1201 THIRD AVENUE | 1301 AVENUE OF THE AMERICAS |
| LOS ANGELES, CALIFORNIA 90067-6029 | SEATTLE, WASHINGTON 98101-3000 | NEW YORK, NEW YORK 10019-6023 |
| (310) 789-3100 | (206) 516-3880 | (212) 336-8330 |

ARUN SUBRAMANIAN
DIRECT DIAL (212) 471-8346

E-MAIL ASUBRAMANIAN@SUSMANGODFREY.COM

July 27, 2020

**VIA ECF**

Hon. Gregory H. Woods
United States District Court
Southern District of New York
500 Pearl Street, Room 226
New York, NY 10007

RE:   *Personalized Media Communications, LLC v. Netflix, Inc.*, Case No. 1:20-cv-03708-GHW

Dear Judge Woods:

The Parties jointly write regarding PMC's request for a pre-motion conference about whether Netflix should be required to (1) designate 30(b)(6) witnesses for seven topics (1(j), 1(k), 2(d), 2(f), 5, 48, and 49) before its motion for supplemental infringement contentions (Dkt. 70) is decided and (2) propose deposition dates for witnesses on agreed upon 30(b)(6) dates. The parties have met and conferred about issue (1) several times, most recently stating their positions on July 17 and July 23, 2020, but do not agree on whether they have met and conferred regarding issue (2). The Parties are at an impasse, and thus seek the Court's assistance.

                                                                     Respectfully submitted,

                                                                     */s/ Arun Subramanian*

                                                                     Arun Subramanian

                                                                     */s/ Alyssa Caridis*

                                                                     Alyssa Caridis

July 27, 2020
Page 2

**Plaintiff's Position**

Since PMC served its Third Notice of Rule 30(b)(6) Deposition to Netflix (attached as Exhibit A) in *November 2019*, the Parties have met and conferred to discuss the scope of the topics contained therein on at least six occasions. Through these extensive negotiations, the Parties were able to reach agreement on many of the topics. However, for seven of those topics, Netflix is unwilling to designate 30(b)(6) witnesses until the Court resolves Netflix's motion for supplemental infringement contentions (Dkt. 70). According to Netflix, that motion is a gating item to supplying a witness on these topics because without supplemental contentions, Netflix lacks sufficient understanding of what is being accused to designate witnesses. And despite PMC's numerous requests, Netflix has also repeatedly fallen through on its promise to propose deposition dates for agreed upon topics. Netflix's position is untenable for four primary reasons and Netflix should be compelled to designate witnesses for all seven topics and propose dates for the agreed upon topics.

First, under this District's Local Patent Rule 9, PMC's infringement contentions do not need be supplemented at this point and, as a result, Netflix should have no problem designating witnesses for the topics at issue. Local Patent Rule 9 applies Fed. R. Civ. P. 26(e)'s general duty to supplement to infringement contentions, and Netflix identifies PMC's access to Netflix's source code and Judge Gilstrap's claim construction order as triggering PMC's duty to supplement. As to the former, any supplementation of PMC's infringement contentions on the basis of the source code can only come once PMC has had the opportunity to depose Netflix's witnesses on the topics at issue. Netflix's approach is backwards: If Netflix wants to better understand PMC's infringement contentions on the basis of its source code, PMC needs to first better understand the source code and the accused instrumentalities to which it relates. The depositions that PMC seeks to schedule are instrumental to that project.

This is especially so because PMC has not had a sufficient opportunity to review Netflix's source code. Between difficulties created by COVID-19, Netflix's approach to providing access to its source code,[1] and the transfer of this case to this District, it was not until the week of July 6, 2020 that PMC was able to end a multi-month hiatus and resume review of Netflix's source code. That review concluded with PMC's expert identifying several deficiencies in the source code that Netflix provided. These lingering issues regarding the source code make the depositions that PMC seeks to compel all the more important to PMC understanding Netflix's source code, identifying the missing source code that must still be produced, and building a basis for any possible supplemental infringement contentions.

---

[1] The code that Netflix initially produced in September 2019 was inadequate, and so PMC filed a motion to compel in the Eastern District of Texas, which was mooted by Netflix accommodations at the eleventh hour. *See* E.D. Tex. Dkt. 119, 131, 137. As the COVID-19 crisis progressed, Netflix made its code available solely in the offices of its local counsel, in Henderson, TX—a place it knew was unavailable to PMC's experts because of COVID-19 travel restrictions.

As for Netflix's claim that Judge Gilstrap's claim construction order requires PMC to supplement its infringement contentions, it cites *no legal authority* to support that argument. *See* Dkt. 70 at 13-16. Nor can it, as PMC is not obligated to supplement its infringement contentions simply because a claim construction ruling has been handed down. As this District has succinctly summarized, "The Local Rules do not require by their language, prior to the completion of discovery, a detailed explanation of how each accused product infringes or the plaintiffs' precise theory of infringement." *Intellectual Ventures II LLC v. JP Morgan Chase & Co.*, No. 13 CIV. 3777 AKH, 2015 WL 3855069, at *5 (S.D.N.Y. June 22, 2015).

Second, in tacit recognition of its problem under this District's Local Patent Rules, Netflix argues that PMC would be required to supplement at this time under the Northern District of California's Local Patent Rules. *See* Dkt. 70 at 6-8 (relying primarily on *Finjan, Inc. v. Check Point Software Tech., Inc.*, No. 18-CV-02621-WHO, 2019 WL 955000 (N.D. Cal. Feb. 27, 2019) and *Big Baboon Corp. v. Dell, Inc.*, 723 F. Supp. 2d 1224 (C.D. Cal. 2010)).[2] To be sure, the obligations and standards set forth in this District's Local Patent Rules materially differ from those set by the Northern District of California's rules. *Compare* N.D. Cal. Local Patent R. 3-6 (supplementation standard) *and* R. 3-1 (infringement contention standard) *with* S.D.N.Y. Local Patent R. 9 *and* R. 6. Even if Netflix were right under the Northern District of California's standard, its reliance on the cases and rules of another district is an improper attempt to subject PMC to a "more exacting standard" than the one PMC actually faces. *Intellectual Ventures*, 2015 WL 3855069, at *5.

Third, Netflix's position ensures a late-August mad-dash to complete depositions before the close of fact discovery on September 11, 2020, *see* Dkt. 54. Briefing on Netflix's motion will not finish until August 11. Building in time for the Court to resolve the motion and for the Parties to revisit the disputed topics on the basis of the Court's resolution leaves, at most, a few weeks before the close of fact discovery. Such limited time will inhibit PMC's ability to effectively depose Netflix's witnesses and to follow up on new facts learned during those depositions, realities of which Netflix is surely aware. Indeed, the Court instructed the parties to avoid the very situation Netflix is trying to create, requiring discovery issues to be identified and raised as early as possible. Despite having PMC's infringement contentions since June 2019, its operative 30(b)(6) notice since November 2019 and the benefit of countless hours of explanation from PMC about the scope of its 30(b)(6) topics, Netflix waited until after the transfer to file a motion to supplement (and then refused to produce corporate testimony). Had this case not been transferred, Netflix would have long ago presented its witnesses on these topics, without any supplementation of PMC's infringement contentions.

---

[2] The two in-District cases that Netflix does cite are inapposite. *See Times Three Clothier, LLC v. Spanx, Inc.*, 2014 WL 1795210 (S.D.N.Y. May 6, 2014) (deliberately departing from the Local Patent Rules "based on the circumstances of [the] particular case"); *Yama Capital LLC v. Canon Inc.*, 2013 WL 6588589 (S.D.N.Y. Dec. 13, 2013) (applying a different version of the Local Patent Rules under this District's Patent Pilot Program).

July 27, 2020
Page 4

Further exacerbating the mad-dash is Netflix's repeated failure to propose deposition dates for witnesses on *agreed* upon topics. Netflix originally promised three depositions before April 24 (*see* Exhibit B). Those never happened because Netflix never provided witnesses or dates. On July 1, PMC again e-mailed Netflix asking for proposed dates. In response, at a July 10 meet and confer, Netflix told PMC it would provide dates during the week of July 13. On the evening of Friday, July 17, Netflix again pushed, promising dates this week. On July 23, Netflix pushed again. To prevent further delay, Netflix should be compelled to put dates on the calendar.

Fourth, even if PMC is required to supplement its infringement contentions at this point, that provides no basis for Netflix to refuse to designate witnesses on the disputed topics now so that the Parties may avoid the rush described above. Sworn testimony from Netflix about how its technology operates surely does not depend on PMC's interpretations of the claim construction order and of Netflix's own source code. After all, Netflix's *has agreed* to designate a witness on comparably technical topics to the topics at issue (such as topics 1(d), 1(e), 1(i) and 64).

For these reasons, Plaintiff seeks to file a motion to compel Netflix to designate witnesses on the seven 30(b)(6) topics in dispute and propose deposition dates for the agreed upon topics.

**Defendant's Position**

PMC's proposed motion is a distraction:  A motion is already pending where this Court will decide whether PMC must supplement its infringement contentions before depositions go forward.  Dkt. 70.  Netflix prefaced this dispute during the Case Management Conference, *see* Tr. at 17:18-18:5, and the Court granted Netflix leave to file its motion. Dkt. 62. Instead of allowing the dispute to be resolved in the already-pending motion, PMC asks to file its own. Any "mad dash" is of PMC's own making, as it can file its opposition to the pending motion at any time.[3] PMC's motion is duplicative and would only needlessly compound the proceedings. The Court need not consider both motions.

Besides, PMC's request fails on the merits. PMC makes a blanket declaration that "Netflix should have no problem designating witnesses for the topics at issue" because "PMC's infringement contentions do not need be supplemented at this point." *See supra* 1. In so doing, PMC ignores the detailed examples Netflix has *already* provided explaining how the contentions are deficient, and how sufficient infringement contentions are a gating item to certain technical discovery. *See* Dkt. 72. "Plaintiff has the burden of providing infringement contentions that identify specifically and in detail where each claim element is found in the accused products, so that the Court can make a principled decision on whether discovery will proceed." *Yama Capital LLC v. Canon Inc.*, No. 12 Civ. 7159 (KPF), 2013 WL 6588589, at *3 (S.D.N.Y. Dec. 13, 2013) (internal citations omitted).

---

[3] The Court permitted PMC *up to* three weeks to respond to Netflix's motion. Dkt. 62. Netflix already suggested to PMC that it was free to file its opposition earlier than the three-week deadline (triggering earlier reply and resolution dates).  Instead of doing so, PMC seeks to start an entirely new clock by filing another motion.

Previewing its opposition to the pending motion, PMC complains that Netflix relies on case law outside this District. Its complaints are misplaced. Courts in this District routinely look to the practices and decisions of other patent-heavy courts when informing the application of this District's rules. *See, e.g.*, *Times Three Clothier, LLC v. Spanx, Inc.*, No. 13 CIV 2157 DLC, 2014 WL 1795210, at *3 (S.D.N.Y. May 6, 2014) (relying on cases from several patent-heavy districts). And as courts in patent-heavy districts acknowledge, infringement contentions must sufficiently describe Plaintiff's infringement theories before corporate depositions are warranted. For example, the plaintiff in *Digital Reg of Tex., LLC v. Adobe Sys. Inc.*, demanded that the defendant produce a witness under Rule 30(b)(6). No. CV 12-01971-CW (KAW), 2013 WL 3361241, at *6 (N.D. Cal. July 3, 2013). The court denied a motion to compel, reasoning that the plaintiff "ha[d] not provided [the defendant] with infringement contentions that sufficiently describe[d] its theories of infringement." *Id.* Moreover, like PMC here, the plaintiff in *Big Baboon Corp. v. Dell, Inc.* argued that it would not be able to produce the pinpoint citations until after it had the opportunity to conduct a Rule 30(b)(6) deposition, among other things. 723 F. Supp. 2d 1224, 1228 (C.D. Cal. 2010). The court disagreed and ordered the plaintiff to "provide infringement claims charts that set forth its infringement theory by showing where each element of each asserted claim is found in each accused system, with pinpoint citations to source code and/or documents to substantiate allegations of infringement" without the requested 30(b)(6) deposition. *See id.* at 1230.

PMC next attempts to avoid its supplementation obligations by brazenly claiming it has not had a sufficient opportunity to review Netflix's source code. Netflix's code has been available to PMC since September 2019. To date, PMC's reviewers have spent ***275 hours over 36 days*** with Netflix's source code—sometimes sending two or three reviewers a day. *See* Dkt. 72 at 2-3 (detailing PMC's access to Netflix's code). And PMC's complaints completely ignore that it has already taken two full days of 30(b)(6) depositions directed ***squarely*** at the produced code. *See id*. Those depositions were taken in January 2020. Now, for the first time, PMC claims that it has "identified several deficiencies in the provided code." PMC did not make any of these "deficiencies" known to Netflix until late on July 23.[4] What's more, since the last time Netflix supplemented its code production, PMC reviewers spent over 158 hours reviewing code—in January, February, March, April and July. Only now—after Netflix filed its motion—is PMC discovering supposed deficiencies.

PMC also contends that it need not supplement its infringement contentions simply because a claim construction ruling has issued. That's fine; Netflix has not argued otherwise. But when a claim construction order renders the disclosed infringement theories untenable, as is the case here, amendment is necessary. PMC's reliance on *Intellectual Ventures* is misplaced. There, the Court found that the plaintiff was ***never*** under a rules-based obligation to provide detailed infringement contentions because the judge was not part of the Patent Pilot Program. 2015 WL 3855069 at *5. By contrast, here, PMC was required to provide such detailed contentions (E.D. Tex. Patent Local Rule 3-1) and is required to supplement them now. *See* Dkt. 72.

---

[4] Netflix is working through PMC's identified "deficiencies" but notes that at least some of the "missing files" have either been on the review computer since January and/or were discussed by the parties in January.

July 27, 2020
Page 6

PMC's proposed motion seeks an order to compel deposition on seven 30(b)(6) topics before supplementing its contentions but doesn't discuss a single topic in its portion of this letter. Without addressing the specific topics, PMC remains silent on why the topics are relevant; why testimony is necessary before PMC can supplement; or how Netflix could prepare a witness on the broad scope of the topics (which explicitly incorporate the infringement contentions), given the untenable state of those contentions. As the party propounding discovery, PMC bears the burden of showing relevance. *Mandell v. The Maxon Co.*, No. 06 CIV. 460 (RWS), 2007 WL 3022552, at *1 (S.D.N.Y. Oct. 16, 2007). PMC fails to meet that burden.

Finally, PMC argues that because Netflix agreed to provide a witness on some technical topics, it must be able to provide a witness on all topics. That Netflix has not uniformly objected to deposition topics actually proves Netflix's point: Where a topic, in conjunction with PMC's vague contentions, are too obtuse to identify and adequately prepare a witness, Netflix has objected.

For example, Netflix has already explained how PMC's infringement contentions for the '344 Patent are untenable in light of the Texas court's construction of "operating instructions." Dkt. 72 at 15-16. And even though that is the only patent where DRM and license keys are mentioned in the infringement contentions, PMC is insisting on a deposition of a corporate witness to discuss the "development, design, functionality, architecture, structure, features, capabilities, and/or programming of [DRM], including encryption, licenses, and keys for Netflix media." Topic 1(k). Netflix cannot identify and prepare a witness if it does not understand what aspect of and how DRM is implicated by PMC's infringement theory.

As another example, PMC accuses Netflix's video player via a few screen shots, vague descriptions, and references to third party material. *See, e.g.*, Dkt. 72 at 9-13. But PMC seeks a witness to testify about all player source code across all platforms (e.g., mobile devices, televisions, web, etc.), Topics 1(j) and 2(d). This code is the responsibility of numerous engineering teams, implicating hundreds of individual engineers. Without pinpoint code citations to what PMC contends infringes, it is impossible to identify appropriate witnesses, let alone prepare them for a deposition.

Finally, PMC's motion to compel deposition dates is unnecessary. In light of vacation schedules and Covid-related issues, it has been difficult to identify witnesses and finalize schedules. Nevertheless, as it indicated it would, Netflix began providing dates to PMC on July 27. Notably, the parties have *never* met-and-conferred about a date certain for a deposition schedule, as PMC now requests. Netflix agreed to work in good faith to provide dates, and it is doing so. And while Netflix originally agreed to provide depositions before April 24 (while still in Texas), the parties then stipulated to transfer the case *and agreed that no Netflix depositions would go forward*.

PMC's request for a pre-motion conference should be denied.