UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

```
USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 7/28/2020
```

```
------------------------------------------------------------------X
 PERSONALIZED MEDIA                       :
 COMMUNICATIONS, LLC,                     :
                                          :
                              Plaintiff,: 
                                          :
          -against-                       :
                                          :
 NETFLIX INC.,                            :
                                          :
                              Defendant.:
------------------------------------------------------------------X
```

                              1:20-cv-3708-GHW

                              <u>MEMORANDUM OPINION
                              AND ORDER</u>

GREGORY H. WOODS, United States District Judge:

Streaming television shows over the internet has exploded in popularity in recent years.

Given the COVID-19 pandemic, it has become a virtual necessity for many.  Netflix Inc. ("Netflix")

is one of the leading purveyors of online streaming services.  Personalized Media Communications,

LLC ("PMC") alleges that Netflix infringed some of its patents.  These patents, which were filed in

the 1980s, relate to controlling, processing, and displaying television signals.

Arguing that PMC's patents are directed to abstract ideas, Netflix now moves for judgment

on the pleadings.  Because PMC has alleged that each of the three patents challenged by Netflix

contains an inventive concept that was not well understood, routine, and conventional when they

were filed, Netflix's motion is DENIED.

## I. BACKGROUND[1]

Netflix is a well-known corporation that "provides subscription services that permit its users to search for and to watch streaming video content over an internet connection." Compl. ¶ 4.  PMC "was founded by inventor and PMC Chairman John Harvey." *Id.* ¶ 23.  Harvey and "his co-inventor James Cuddihy" filed the three patents at issue here in the 1980s. *Id.* ¶¶ 15-16, 18, 23.  The first patent is U.S. Patent No. 7,769,344 (the "'344 Patent").  Dkt No. 69-2; *see also* Compl. ¶ 16.  The second patent is U.S. Patent No. 8,601,528 (the "'528 Patent").  Dkt No. 69-3; *see also* Compl. ¶ 18.  The third patent is U.S. Patent No. 7,747,217 (the "'217 Patent").  Dkt No. 69-4; *see also* Compl. ¶ 15.  The patents share the same name, "Signal Processing Apparatus and Methods," and share a common specification.  The patents are generally directed to controlling, processing, and displaying television signals.

PMC sued Netflix for patent infringement in the Eastern District of Texas.  Dkt No. 1.  PMC alleges that "[t]he technology claimed in this case relates to adaptive video streaming, which enables content providers like Netflix to serve each user the highest possible quality video over the Internet." Compl. ¶ 14.  Judge Rodney Gilstrap in the Eastern District of Texas issued a claim construction order in a related case. *Personalized Media Commc'ns, LLC v. Google LLC*, No. 2:19-cv-89 (JRG), 2020 WL 1666462 (E.D. Tex. Apr. 3, 2020).  After the court issued the claim construction order, the parties jointly moved to transfer the case to the Southern District of New York. *Personalized Media Commc'ns, LLC v. Google LLC*, No. 2:19-cv-90 (JRG), Dkt No. 192.  Judge Gilstrap granted the motion. *Id.*, Dkt No. 194.

---

[1] The facts are drawn from PMC's complaint ("Compl."), Dkt No. 1.  For this motion, the Court must accept as true the facts alleged in the complaint. *See, e.g.*, *Lynch v. City of N.Y.*, 952 F.3d 67, 75 (2d Cir. 2020).  But "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

Netflix now moves for judgment on the pleadings, arguing that the patents are ineligible under 35 U.S.C. § 101 ("Section 101").  Dkt Nos. 57-58.  PMC opposed the motion, Dkt No. 69, and Netflix replied, Dkt No. 78.

## II. LEGAL STANDARD

"Under § 101, patents may be granted for 'any new and useful process, machine, manufacture, or composition of matter, or any new and useful improvement thereof.'"  *Cellspin Soft, Inc. v. Fitbit, Inc.*, 927 F.3d 1306, 1314 (Fed. Cir. 2019), *cert. denied sub nom. Garmin USA, Inc. v. Cellspin Soft, Inc.*, 140 S. Ct. 907 (2020) (quoting 35 U.S.C. § 101).  "[T]his statutory text includes an important but implicit exception for laws of nature, natural phenomena, and abstract ideas.  Claims for these categories of inventions are not patent eligible."  *Id.* (citing *Alice Corp. Pty. Ltd. v. CLS Bank Int'l*, 573 U.S. 208, 216 (2014)); *see also CardioNet, LLC v. InfoBionic Inc.*, 955 F.3d 1358, 1367 (Fed. Cir. 2020) ("The Supreme Court has identified three types of subject matter that are not patent-eligible:  '[l]aws of nature, natural phenomena, and abstract ideas[.]'" (quoting *Alice*, 573 U.S. at 216)); *Le Roy v. Tatham*, 55 U.S. 156, 175 (1852) ("[A] principle is not patentable.  A principle, in the abstract, is a fundamental truth; an original cause; a motive; these cannot be patented, as no one can claim in either of them an exclusive right.").

"These categories of subject matter have been excluded from patent-eligibility because they represent 'the basic tools of scientific and technological work.'"  *Koninklijke KPN N.V. v. Gemalto M2M GmbH*, 942 F.3d 1143, 1149 (Fed. Cir. 2019) (quoting *Ass'n for Molecular Pathology v. Myriad Genetics, Inc.*, 569 U.S. 576, 589 (2013)); *see also Nat. Alts. Int'l, Inc. v. Creative Compounds, LLC*, 918 F.3d 1338, 1342 (Fed. Cir. 2019) (describing "laws of nature, natural phenomena, and abstract ideas" as "'building blocks of human ingenuity'" (quoting *Alice*, 573 U.S. at 216-17)).  And "[t]hese exceptions exist because monopolizing the basic tools of scientific work 'might tend to impede innovation more than it would tend to promote it.'"  *Illumina, Inc. v. Ariosa Diagnostics, Inc.*, 952 F.3d 1367, 1371 (Fed. Cir. 2020) (quoting *Mayo Collaborative Servs. v. Prometheus Labs., Inc.*, 566 U.S. 66, 71

(2012)).  The Supreme Court has described this as an "exclusionary principle."  *Alice*, 573 U.S. at 216.  And "[t]he 'concern that drives this exclusionary principle is one of pre-emption.'"  *Koninklijke*, 942 F.3d at 1149 (quoting *Alice*, 573 U.S. at 216).  So courts should be wary of patents that threaten to "pre-empt use of [an] approach in all fields" thereby "effectively grant[ing] a monopoly over an abstract idea."  *Bilski v. Kappos*, 561 U.S. 593, 612 (2010).

But "too broad an interpretation of this exclusionary principle could eviscerate patent law. For all inventions at some level embody, use, reflect, rest upon, or apply laws of nature, natural phenomena, or abstract ideas."  *Nat. Alts.*, 918 F.3d at 1342 (quoting *Mayo*, 566 U.S. at 71).  Thus, a court must also be sure not to "describ[e] the claims . . . at a high level of abstraction and untethered from the language of the claims" for that would "all but ensure[] that the exceptions to § 101 swallow the rule."  *Enfish, LLC v. Microsoft Corp.*, 822 F.3d 1327, 1337 (Fed. Cir. 2016).

"To distinguish between eligible and ineligible patent claims, the Supreme Court has fashioned a two-step test," often called the *Alice/Mayo* inquiry.  *Cellspin*, 927 F.3d at 1314 (citing *Alice*, 573 U.S. at 217-18); *see also Mayo*, 566 U.S. at 72-73, 77-79.  "At step one of the *Alice/Mayo* framework, [courts] ask whether the claim at issue is 'directed to a patent-ineligible concept[.]'"  *Cellspin*, 927 F.3d at 1314-15 (quoting *Alice*, 573 U.S. at 218) (alterations omitted).  The inquiry is whether the "claims 'in their entirety'" are "'directed to excluded subject matter'"—that is, a laws of nature, a natural phenomenon, or an abstract idea.  *CardioNet*, 955 F.3d at 1367 (quoting *McRO, Inc. v. Bandai Namco Games Am. Inc.*, 837 F.3d 1299, 1312 (Fed. Cir. 2016)); *see also Koninklijke*, 942 F.3d at 1149 (describing this inquiry as "look[ing] at the 'focus of the claimed advance over the prior art'") (quoting *Affinity Labs of Tex., LLC v. DIRECTV, LLC*, 838 F.3d 1253, 1257 (Fed. Cir. 2016)); *BASCOM Glob. Internet Servs. v. AT&T Mobility LLC*, 827 F.3d 1341, 1348 (Fed. Cir. 2016) (holding that courts must examine the "basic thrust" of the claim at *Alice* step one).

At *Alice* step one, there is "an important common-sense distinction between ends sought and particular means of achieving them, between desired results (functions) and particular ways of

achieving (performing) them." *Elec. Power Grp. v. Alstom S.A.*, 830 F.3d 1350, 1356 (Fed. Cir. 2016); *see also Am. Axle & Mfg. v. Neapco Holdings LLC*, 939 F.3d 1355, 1364 (Fed. Cir. 2019) (invoking the "distinction between results and means" at *Alice* step one). Claims that use such "'result-based functional language' without describing how the[ir] goal[s] . . . [are] achieved" are directed to abstract ideas. *Koninklijke*, 942 F.3d 1143, 1153 (Fed. Cir. 2019) (quoting *Two-Way Media Ltd v. Comcast Cable Commc'ns, LLC*, 874 F.3d 1329, 1337 (Fed. Cir. 2017)). "Indeed, the essentially result-focused, functional character of claim language has been a frequent feature of claims held ineligible under § 101[.]" *Elec. Power Grp.*, 830 F.3d at 1356. Claims must therefore "ha[ve] the specificity required to transform a claim from one claiming only a result to one claiming a way of achieving it." *Ericsson Inc. v. TCL Commc'n Tech. Holdings Ltd.*, 955 F.3d 1317, 1328 (Fed. Cir. 2020) (quoting *SAP Am., Inc. v. InvestPic, LLC*, 898 F.3d 1161, 1167 (Fed. Cir. 2018), *cert. denied*, 139 S. Ct. 2747 (2019)).

"If the claims are not directed to a patent-ineligible concept under *Alice* step 1, 'the claims satisfy § 101 and [courts] need not proceed to the second step.'" *CardioNet*, 955 F.3d at 1368 (quoting *Data Engine Techs. LLC v. Google LLC*, 906 F.3d 999, 1007 (Fed. Cir. 2018)).

"If the claims are directed to a patent-ineligible concept, however, [courts] next consider *Alice* step two." *Id.* (quoting *Data Engine*, 906 F.3d at 1007). "In this step, [courts] consider 'the elements of each claim both individually and "as an ordered combination" to determine whether the additional elements 'transform the nature of the claim' into a patent-eligible application." *Id.* (quoting *Alice*, 573 U.S. at 217). "This second step is 'a search for an "inventive concept"—*i.e.*, an element or combination of elements that is sufficient to ensure that the patent in practice amounts to significantly more than a patent upon the ineligible concept itself.'" *Id.* (quoting *Alice*, 573 U.S. at 217-18) (brackets omitted).

For a claim to include an "inventive concept," it must "'involve more than performance of well-understood, routine, and conventional activities previously known to the industry.'" *Berkheimer v. HP Inc.*, 881 F.3d 1360, 1367 (Fed. Cir. 2018), *cert. denied*, 140 S. Ct. 911 (2020) (quoting *Content*

*Extraction & Transmission LLC v. Wells Fargo Bank, Nat. Ass'n*, 776 F.3d 1343, 1347-48 (Fed. Cir. 2014)); *see also In re Rudy*, 956 F.3d 1379, 1386 (Fed. Cir. 2020)("'[W]ell-understood, routine, conventional activities previously known to the industry' cannot provide an inventive concept." (quoting *Alice*, 573 U.S. at 225)).  "Whether something is well-understood, routine, and conventional to a skilled artisan" must be evaluated not from the perspective of the present day or with the benefit of hindsight but from the "time of the patent."  *Berkheimer*, 881 F.3d at 1369.

At *Alice* step two, "[t]he appropriate question is not whether the entire claim as a whole was 'well-understood, routine and conventional' to a skilled artisan (*i.e.*, whether it lacks novelty)[.]" *Chamberlain Grp. v. Techtronic Indus. Co.*, 935 F.3d 1341, 1348-49 (Fed. Cir. 2019) (quoting *Mayo*, 566 U.S. at 73) (brackets omitted).  Instead, "there are two distinct questions[.]"  *Id.* at 1349.  The first is "whether each of 'the elements in the claimed product (apart from the natural laws themselves) involve well-understood, routine, conventional activity previously engaged in by researchers in the field[.]'"  *Id.* (quoting *Mayo*, 566 U.S. at 73) (brackets omitted).  The second is "whether all of the steps 'as an ordered combination add nothing to the laws of nature that is not already present when the steps are considered separately[.]'"  *Id.* (brackets and emphasis omitted).

Courts may assume without deciding that a claim passes *Alice* step one if the claim has an inventive concept adequate to pass muster at step two.  *See Amdocs (Isr.) Ltd. v. Openet Telecom, Inc.*, 841 F.3d 1288, 1299-1307 (Fed. Cir. 2016) (assuming without deciding that claims were directed to an abstract idea at *Alice* step one but holding that they were patent eligible at Alice step two because they contained inventive concepts).[2]  District courts regularly do so.[3]  Although courts ordinarily

---

[2] *See also id.* at 1307 (Reyna, J., dissenting) (criticizing the majority for not "determining whether the asserted claims are directed to an abstract idea, or even identifying what the underlying abstract idea is"); *Synchronoss Techs., Inc. v. Dropbox Inc.*, 226 F. Supp. 3d 1000, 1007 (N.D. Cal. 2016) (noting that *Amdocs* assumed that claims assumed without deciding that a patent was directed to an abstract idea at Alice step one).

[3] *See, e.g., Peloton Interactive, Inc. v. Echelon Fitness, LLC*, No. 19-cv-1903 (RGA), 2020 WL 3640064, at *3 (D. Del. July 6, 2020); *Proto Labs, Inc. v. Ico Prods., LLC*, No. 15-cv-2562 (SRN) (JSM), 2016 WL 4974951, at *6 (D. Minn. Sept. 16, 2016); *Orbcomm Inc. v. Calamp Corp.*, 215 F. Supp. 3d 499, 508 (E.D. Va. 2016); *TRUSTID, Inc. v. Next Caller, Inc.*, No. 18-cv-172 (LPS), 2019 WL 917995, at *2 (D. Del. Feb. 25, 2019), *report and recommendation adopted*, No. 18-cv-172 (LPS) (CJB), 2019

resolve step one before proceeding to step two, it is within a court's discretion to skip straight to step two.  In doing so, the court must still consider step one issues to the extent that they bear on the step two analysis.  *See Amdocs*, 841 F.3d at 1294 (noting the "considerable overlap between step one and step two"); *cf. Pearson v. Callahan*, 555 U.S. 223, 236-43 (2009).

"Patent eligibility under 35 U.S.C. § 101 is a question of law, based on underlying factual findings."  *Uniloc USA, Inc. v. LG Elecs. USA, Inc.*, 957 F.3d 1303, 1306 (Fed. Cir. 2020) (citing *SAP*, 898 F.3d at 1166); *see also Aatrix Software, Inc. v. Green Shades Software, Inc.* (*Aatrix I*), 882 F.3d 1121, 1128 (Fed. Cir. 2018) ("While the ultimate determination of eligibility under § 101 is a question of law, like many legal questions, there can be subsidiary fact questions which must be resolved en route to the ultimate legal determination.").  "Whether the claim elements or the claimed combination are well-understood, routine, [and] conventional is a question of fact."  *Aatrix I*, 882 F.3d at 1128; *see also Berkheimer*, 881 F.3d at 1368; *Aatrix Software, Inc. v. Green Shades Software, Inc.* (*Aatrix II*), 890 F.3d 1354, 1355 (Fed. Cir. 2018) (Moore, J., concurring in the denial of rehearing en banc) ("*Berkheimer* and *Aatrix* stand for the unremarkable proposition that whether a claim element or combination of elements would have been well-understood, routine, and conventional to a skilled artisan in the relevant field at a particular point in time is a question of fact.").[4]

As with any Rule 12(b)(6) or Rule 12(c) motion,[5] a court must "determine whether the facts alleged in the complaint, taken as true, entitle the plaintiff to a legal remedy."  *Cellspin*, 927 F.3d at

WL 1324948 (D. Del. Mar. 25, 2019); *S.I.SV.EL. Societa Italiana per lo Sviluppo Dell'Elettronica S.p.A v. Rhapsody Int'l Inc.*, No. 18-cv-69 (MN) (CJB), 2019 WL 2298795, at *4 (D. Del. May 30, 2019).

[4] Individual Federal Circuit judges have argued that *Berkheimer* and *Aatrix I* represented a sharp and ill-considered break from prior precedent.  *See Aatrix II*, 890 F.3d at 1362 (Reyna, J., dissenting from the denial of rehearing en banc) ("*Aatrix* and *Berkheimer* alter the § 101 analysis in a significant and fundamental manner by presenting patent eligibility under § 101 as predominately a question of fact."); *In re Marco Guldenaar Holding B.V.*, 911 F.3d 1157, 1162 (Fed. Cir. 2018) (Mayer, J., concurring in the judgment) ("I cannot agree with the court when it states that the patent eligibility inquiry may contain underlying issues of fact.'" (citation omitted)).  That dispute, of course, is above this Court's pay grade; *Berkheimer* and *Aatrix I* are binding authority.

[5] "The standard for granting a Rule 12(c) motion for judgment on the pleadings is identical to that for granting a Rule 12(b)(6) motion for failure to state a claim."  *Lynch*, 952 F.3d at 75 (brackets and citation omitted); *see also Nat. Alts.*, 918 F.3d at 1342 (applying Ninth Circuit law and holding that the standards for Rule 12(b)(6) and Rule 12(c) motions are "functionally identical" (citation omitted).  The Federal Circuit "review[s] a district court's grant of a Rule 12(b)(6) [or

1314 (quoting *Chavez v. United States*, 683 F.3d 1102, 1108 (9th Cir. 2012)); *see also* Fed. R. Civ. P.

12(c) ("After the pleadings are closed—but early enough not to delay trial—a party may move for

judgment on the pleadings."); *Aatrix II*, 890 F.3d at 1357 (Moore, J., concurring in the denial of

rehearing en banc) ("If patent eligibility is challenged in a motion to dismiss for failure to state a

claim pursuant to Rule 12(b)(6), we must apply the well-settled Rule 12(b)(6) standard which is

consistently applied in every area of law."); *Ventura de Paulino v. N.Y.C. Dep't of Educ.*, 959 F.3d 519,

529 (2d Cir. 2020). A reviewing court must "accept[] as true the complaint's factual allegations and

constru[e] them in the light most favorable to the plaintiff." *Aatrix I*, 882 F.3d at 1124 (citing

*Speaker v. U.S. Dep't of Health & Human Servs.*, 623 F.3d 1371, 1379 (11th Cir. 2010)); *see also Olagues v.*

*Perceptive Advisors LLC*, 902 F.3d 121, 123 (2d Cir. 2018). The court must also "draw all reasonable

inferences in favor of the plaintiff." *ChargePoint*, 920 F.3d at 764-65 (citing *Semenova v. Md. Transit*

*Admin.*, 845 F.3d 564, 567 (4th Cir. 2017)); *see also Sullivan-Mestecky v. Verizon Commc'ns Inc.*, 961 F.3d

91 (2d Cir. 2020).[6] The court may look only to "sources properly considered on a motion to

dismiss, such as the complaint, the patent, and materials subject to judicial notice." *Aatrix I*, 882

F.3d at 1128. And the "court need not 'accept as true allegations that contradict matters properly

subject to judicial notice or by exhibit,' such as the claims and the patent specification." *Secured Mail*

*Sols. LLC v. Universal Wilde, Inc.*, 873 F.3d 905, 913 (Fed. Cir. 2017) (quoting *Anderson v. Kimberly-*

*Clark Corp.*, 570 F. App'x 927, 931 (Fed. Cir. 2014)).

Courts may determine patent eligibility at the Rule 12(c) stage "only when there are no

factual allegations that, taken as true, prevent resolving the eligibility question as a matter of law."

---

Rule 12(c)] motion under the law of the regional circuit." *ChargePoint, Inc. v. SemaConnect, Inc.*, 920 F.3d 759, 764 (Fed. Cir. 2019) (citing *Aatrix I*, 882 F.3d at 1124).

[6] PMC argues that the "defense of patent ineligibility is Netflix's to plead and prove by clear and convincing evidence." Opp. at 8. It is true that "[a]ny *fact*, [such as whether a claim element or combination is well-understood or routine], that is pertinent to the invalidity conclusion must be proven by clear and convincing evidence." *Berkheimer*, 881 F.3d at 1368 (emphasis added); *see also Cellspin*, 927 F.3d at 1319; *Microsoft Corp. v. i4i Ltd. P'ship*, 564 U.S. 91, 100 (2011). But the Court must accept as true the factual allegations in the complaint at this stage. So the "clear and convincing" burden of persuasion is not relevant to this motion.

*Aatrix I*, 882 F.3d at 1125. Thus, "plausible factual allegations may preclude dismissing a case under § 101 where, for example, nothing on the record refutes those allegations as a matter of law or justifies dismissal under Rule 12(b)(6) [or Rule 12(c)]." *Id.* (quoting *FairWarning IP, LLC v. Iatric Sys., Inc.*, 839 F.3d 1089, 1097 (Fed. Cir. 2016)) (alterations omitted). "[P]lausible and specific factual allegations that aspects of the claims are inventive are sufficient." *Cellspin*, 927 F.3d at 1317 (citing *Aatrix* I, 882 F.3d at 1128). And "patentees who adequately allege their claims contain inventive concepts survive a § 101 eligibility analysis under Rule 12(b)(6) [and Rule 12(c)]." *Aatrix I*, 882 F.3d at 1126-27.

## III. DISCUSSION

### A. The '344 Patent

PMC has adequately alleged that the '344 patent contains an inventive concept that was not well-understood, routine, and conventional in 1981. Netflix argues that claim 1 is representative.[7] Claim 1 recites:

> 1. A method for reprogramming a receiver station that receives television or radio programming, said receiver station having a data network connection to an external data network, a processor, an input device, and a data storage device, said method comprising the steps of:
>
> [a] storing first operating instructions at said receiver station, executing said first operating instructions at said processor to perform a first function, said first operating instructions being different from permanent operating instructions permanently stored at said receiver station;
>
> [b] generating a query at said receiver station, said query comprising a request by said receiver station for reprogramming;
>
> [c] promulgating said query from said receiver station under control of said processor executing said first operating instructions through said data network connection to said external data network;

---

[7] As to all three patents, Netflix argues that certain claims are representative of all the patent claims. *See* Memorandum of Law in Support of Motion for Judgment on the Pleadings ("Mem."), Dkt No. 58, at 9 ("Claim 1 is representative[.]"). PMC disagrees with that contention. *See* Opposition to Motion for Judgment on the Pleadings ("Opp."), Dkt No. 69, at 11. The Court need not resolve these disputes, however, because the Court denies the motion as to all the claims Netflix identifies as representative.

[d] receiving second operating instructions different from both said permanent operating instructions and said first operating instructions in response to said step of promulgating said query, said second operating instructions for controlling operation of said processor, wherein said first and said second operating instructions do not include audio data, video data, image data and any combination thereof;

[e] reprogramming said processor with said received second operating instructions;

[f] performing a second function by executing said second operating instructions at said processor, said second function including controlling reception of signals required to output a video programming transmission;

[g] receiving said signals required to output said video programming transmission;

[h] processing said signals to enable the output of said video programming transmission;

[i] and outputting said video programming transmission for display to a viewer.

'344 Patent at 285:57-286:27.

The complaint alleges that the '344 Patent permits "receiver station software" to "remotely and dynamically reprogram[]." Compl. ¶ 16. That reprogramming allegedly augments the receiver station's ability to "receiv[e] video programming." *Id.* The patented invention was "made in 1981." *Id.* "Conventional systems of 1981—typically a television and cable box—did not have the capacity for remote reprogramming." *Id.* Because the '344 invention has such capacity, PMC pleads it "represented a significant advance over what was conventional" at that time. *Id.* PMC claims that "[a]dvantages of the '344 invention over prior technologies include . . .: fully automated updates to receiver station software; extension of receiver station operating life; standardization of receiver station software within a network; and the remote addition of new features and capabilities to a receiver station." *Id.*

The patent specification also states that the invention allows "for wide variation in individual station apparatus[es]" to "provide individual subscribers" with a wider variety of programming options on the same equipment. '344 Patent at 9:13-16. It also "expand[s] the capacity of installed

systems" because it permitted owners to upgrade those systems through "transmitted software" and "in a modular fashion[.]"  *Id.* at 9:17-20.

PMC has adequately pleaded that the '344 patent has an inventive concept because remote reprogramming was not well-understood, routine, and conventional at the time of the patent.  The Court need not decide at this stage whether the '344 patent is directed to an abstract idea at *Alice* step one.  Even if the '344 Patent is abstract, it passes muster at *Alice* step two.  Claim 1 of the '344 patent describes a process for remote reprogramming of television and radio systems.  And the complaint alleges that "[c]onventional systems" in 1981 "did not have the capacity for remote reprogramming."  Compl. ¶ 16.  So the '344 patent, according to the complaint, was a significant advance over existing technology.  This is a "plausible and specific factual allegation[] that aspects of the claim[] are inventive[.]"  *Cellspin*, 927 F.3d at 1317 (citing *Aatrix I*, 882 F.3d at 1128).  And it bears repeating that even if the concept of remote reprogramming is well-established *today*, the question is whether the concept was well understood, routine, and conventional *in 1981*.  *See Berkheimer*, 881 F.3d at 1369.  Accepting as true the allegations in PMC's complaint, it was not.

Even if the concept of remote reprogramming is an abstract idea (which the Court does not decide) that was well understood, routine, and conventional in 1981 (though PMC has alleged it was not), PMC has plausibly alleged that adding remote reprogramming together with television and radio systems "as an ordered combination" is inventive enough to survive a motion for judgment on the pleadings.  *Chamberlain*, 935 F.3d at 1349 (quoting *Mayo*, 566 U.S. at 73) (emphasis omitted).  The complaint also alleges that the '344 patent allowed for "fully automated updates to receiver station software," which prior technology did not.  Compl. ¶ 16.  These allegations are adequate to survive this motion for judgment on the pleadings.

Netflix's counterarguments at *Alice* step two are unavailing.  Netflix first argues that "the challenged claims recite only routine and conventional activities like sending and receiving information[.]"  Mem. at 15.  Not true.  The claim recites a "method for reprogramming a receiver

station." '344 Patent at 285:58.  That is more specific than sending or receiving information.
Indeed, Netflix glosses over the concept of remote reprogramming entirely in its motion papers.  In
a sense, of course, remote reprogramming is just the sending and receiving of information.  But
Netflix's argument "describe[es] the claims" at too "high [a] level of abstraction[.]"  *Enfish*, 822 F.3d
at 1337.  Looking to the words of the claim itself—and the complaint's allegations about what was
conventional in 1981—PMC has done more than describe generic and conventional processes.

　　　Netflix leans heavily on *Personalized Media Commc'ns, LLC v. Amazon.Com, Inc.*, which
considered the '252 patent—a similar, though different, PMC patent.  161 F. Supp. 3d 325, 331-32
(D. Del. 2015), *aff'd sub nom.*, 671 F. App'x 777 (Fed. Cir. 2016) (per curiam).[8]  *Amazon* is not
persuasive.  Most importantly, that decision does not discuss allegations in the complaint.  Here, the
allegations in the complaint are instrumental to the Court's conclusion that the processes claimed in
the '344 patent were not well-understood, routine, and conventional in 1981.  Relatedly, *Amazon* was
decided before *Aatrix* and *Berkheimer*, which clarified this area of law.  *See, e.g.*, *Aatrix II*, 890 F.3d at
1362 (Reyna, J., dissenting from the denial of rehearing en banc) ("*Aatrix* and *Berkheimer* alter the
§ 101 analysis in a significant and fundamental manner by presenting patent eligibility under § 101 as
predominately a question of fact.").[9]  The '252 patent may also be materially distinguishable from the
'344 patent.  *See* Mem. at 10-12 (arguing that the patents are indistinguishable but noting that there
are elements of the '344 patent that have no analogue to the '252 patent).  And, as the Court reads
*Amazon*, its analysis is focused mostly on *Alice* step one, so it has little persuasive value for *Alice* step
two.  For all those reasons, *Amazon* does not control the outcome here.

　　　Netflix also cites *MyMail, Ltd. v. OoVoo, LLC*, No. 17-cv-4487 (LHK), 2020 WL 2219036
(N.D. Cal. May 7, 2020).  That decision is distinguishable.  The dispute in *MyMail* centered on a

---

[8] The Federal Circuit affirmed the district court's decision in *Amazon* without an opinion under Federal Circuit Rule 36.
*See* Fed. Cir. R. 36
[9] Both reasons also distinguish *Intellectual Ventures I, LLC v. Motorola Mobility LLC*, another case cited by Netflix.  81 F.
Supp. 3d 356, 365-67 (D. Del. 2015)

method for updating "toolbar" software over a network.  *See id.* at *1.  *MyMail* held that the patents at issue were ineligible under *Alice*.  *See id.* at *22.  But the *MyMail* court noted that the complaint in that case "fail[ed] to even mention" the allegedly inventive concept.  *Id.* at *20.  The opposite is true here:  PMC's complaint alleges that remote reprogramming was a significant advance over prior art. The patents at issue in *MyMail* were also filed in 2003 and 2013.  *See id.*  The '344 patent was filed in 1981.  So even if the patents in *MyMail* and the '344 Patent are directed to similar concepts, the question of what was well understood, routine, and conventional at the time of the patent filing might be different.

In its reply, Netflix argues that PMC "ignores" that the "specification itself describes the claim elements and their arrangement as conventional."  Reply Memorandum of Law in Support of Motion for Judgment on the Pleadings ("Rep."), Dkt No. 78, at 6 (citing '344 Patent at 1:45-47; 7:25-27; 11:35-43).  Two of its three citations to the specification provide little, if any, support for that argument.  *See* '344 Patent at 1:45-47 ("For years, computers have been recognized as having unsurpassed capacity for processing and displaying user specific information."); *id.* at 7:25-27 ("Such ultimate receiver stations may be private homes or offices or commercial establishments such as theaters, hotels, or brokerage offices.").  The third is a little closer to the target.  *See id.* at 11:35-43 ("From said program originating studio said program is transmitted by conventional television network feed transmission means, well known in the art, to a large number of geographically dispersed intermediate transmission stations that retransmit said program to millions of subscriber stations where subscribers view said program.  Said network transmission means may include so-called landlines, microwave transmissions, a satellite transponder, or other means.").  It is true that this part of the specification states that the invention relies on "conventional television network feed transmissions means[.]"  *Id.* at 11:36-37.  But simply because one part of a patent relies on conventional hardware does not mean that the entire patent lacks an inventive concept.  And in any

event, the question is whether remote reprogramming is an inventive concept. PMC has alleged that it is, and the patent specification does not contradict that allegation.

Netflix's final argument is that PMC cannot allege an inventive concept in the complaint when "its allegations are not reflected in the claims." Rep. at 6 (citing *Two-Way Media*, 874 F.3d at 1338). It is true that "an inventive concept must be evident in the claims . . . to save a patent at step two." *Two-Way Media*, 874 F.3d at 1338. But the claims need only recite what makes the claims inventive to render plausible a complaint's allegations about an inventive concept. *See Cellspin*, 927 F.3d at 1317 ("As long as what makes the claims inventive is recited by the claims, the specification need not expressly list all the reasons why this claimed structure is unconventional."). In other words, although "any allegation about inventiveness, wholly divorced from the claims or the specification" does not "defeat[]" a Rule 12 motion, "plausible and specific factual allegations that aspects of the claims are inventive are sufficient." *Id.*

The '344 patent and PMC's complaint meet this standard. PMC alleges that what makes the claims inventive is the ability to do remote reprogramming. That ability is recited by the claims. *See, e.g.*, '344 Patent at 285:58 (claiming a "method for reprogramming a receiver station"). That is adequate for the claim to survive this Rule 12(c) motion.

PMC has adequately alleged that Claim 1 of the '344 patent contains an inventive concept. Netflix's arguments about Claim 2 assume that Claim 1 is invalid. Because the Court has rejected that premise, it also rejects Netflix's arguments about Claim 2.

**B. The '528 Patent**

PMC has adequately pleaded that the '528 Patent contains an inventive concept that was not well understood, routine, and conventional in at the time of the invention. Netflix argues that Claims 21 and 32 are representative. Claim 21 recites:

> 21. A method of controlling the display of television programming at a receiver station, wherein said receiver station includes a monitor for displaying said television programming, a receiver operatively connected to said monitor, and a processor

14

operatively connected to at least one of said monitor and said receiver, said method comprising the steps of:

[a] receiving an information transmission including a television signal;

[b] passing at least a portion of said information transmission to said processor;

[c] determining the absence of complete generated television image data by processing information at least one of included in and received with said television signal;

[d] determining a location of subsequent information for advancing to based on said step of determining the absence of complete generated television image data;

[e] advancing to the subsequent information received in said information transmission; and

[f] preventing said monitor from displaying an incomplete television image based on said step of determining the absence of complete generate television image data, wherein said method controls the display of said television programming at said receiver station.

'528 Patent at 287:8-29.

Claim 32 states:

32. A method of controlling the display of television programming at a receiver station, wherein said receiver station includes a monitor for displaying television programming, a receiver operatively connected to said monitor, and a processor operatively connected to at least one of said monitor and said receiver, said method comprising the steps of:

[a] transmitting from a transmitter station an information transmission including a television signal;

[b] generating at least one control signal; and

[c] transmitting said at least one control signal, wherein said at least one control signal:

> [i] effects said receiver station to determine the absence of complete generated television image data by processing information at least one of included in and received with said television signal; and

> [ii] prevents said monitor from displaying an incomplete television image based on said determining the absence of complete generate television image data, wherein said receiver station clears the incomplete television image data based on said information at least one of included in and received with said television signal.

*Id.* at 288:14-35.

The complaint alleges that the '528 Patent permits "a receiver station to skip over video frames if the receiver station detects that they are incomplete." Compl. ¶ 18. A receiver station "process[es] data" associated with a television signal to "determine if a video image within the signal is complete." *Id.* "If the image is incomplete, the receiver station will prevent the image from being displayed and will automatically advance to subsequent information received with the television signal." *Id.* PMC alleges that "conventional technology systems" did not have the "capability to skip the display of incomplete video images." *Id.* So a viewer might not even realize that some of the video frames are incomplete, which allegedly makes for a better viewing experience. "The invention was made in 1987[.]" *Id.*

PMC has plausibly alleged that the '528 Patent has an inventive concept. PMC alleges that it was not well understood, routine, and conventional in 1987 for television systems to skip over incomplete images.[10] PMC specifically alleges that "conventional technology systems of that time . . . had no capability to skip the display of incomplete video images." Compl. ¶ 18. Thus, PMC has plausibly pleaded that this was an inventive concept. *See Cellspin*, 927 F.3d at 1317-18 (reversing a district court for "not accepting . . . allegations" that an aspect of its claimed invention was "non-existent prior to its inventions"); *see also Apple*, 2016 WL 5719701, at *10 (concluding that a similar PMC patent passed *Alice* step two).[11]

Netflix's arguments focus on *Alice* step one. Its argument for why the '528 Patent lacks an inventive concept is limited to two paragraphs in its moving papers. *See* Mem. at 22-23. Those paragraphs argue that "[t]he claims recite only conventional, generic components found in all

---

[10] Although the Court does not decide whether the '528 Patent is directed to an abstract concept at *Alice* step one, Netflix concedes that a different court held that a patent that "shares some elements with the '528 Patent" passed *Alice* step one. Mem. at 21 n.4; *see Personalized Media Commc'ns, LLC v. Apple Inc.*, No. 2:15-cv-1366 (JRG) (RSP), 2016 WL 5719701, at *9 (E.D. Tex. Sept. 13, 2016), *report and recommendation adopted*, No. 2:15-cv-1366 (JRG) (RSP), 2016 WL 5475798 (E.D. Tex. Sept. 29, 2016).

[11] Again, Netflix analogizes to *Amazon*. Again, the analogy is unpersuasive. As noted, *Amazon* was decided before *Aatrix* and *Berkheimer*. And as with the patent discussed above, *Amazon* does not discuss allegations in the complaint and has little analysis of *Alice* step two. It has little persuasive value for the Court's analysis of the '528 patent.

computers, including a monitor, a receiver, and a processor." *Id.* (citations omitted).  Even if that is

true, it does not defeat PMC's arguments at *Alice* step two.  Granted, "[w]hen a claim 'does no more

than require a generic computer to perform generic computer functions,' . . . the claims lack an

inventive concept sufficient to demonstrate eligibility at step two." *Ericsson*, 955 F.3d at 1330-31

(quoting *Alice*, 573 U.S. at 225).  But that obscures whether the "computer functions" at issue were

"*generic*" when the patent was filed.  *Ericsson*, 955 F.3d at 1330 (quoting *Alice*, 573 U.S. at 225)

(emphasis added).  PMC has pleaded that conventional television systems in 1987 could not skip

incomplete images.  That function may be so widespread that it is conventional in 2020, but PMC

has plausibly alleged that it was not in 1987.

Netflix also argues in its reply that PMC's allegations that skipping over incomplete video

images was an inventive concept is inadequate because "skipping information is an abstract idea."

Rep. at 10.  Netflix again tries to "describ[e] the claims" at an excessively "high level of

abstraction[.]" *Enfish*, 822 F.3d at 1337.  The inventive concept alleged in the complaint is not

"skipping information" in the abstract.  It is skipping incomplete video frames.  PMC has plausibly

alleged that this concept was inventive concept in 1987.

Netflix finally argues that "the specification acknowledges that every part of detecting and

skipping information was known."  Rep. at 11 (emphasis and citations to the specification omitted).

Even if so, the Court cannot grant judgment on the pleadings.  The question is "whether all of the

steps '*as an ordered combination* add nothing to the laws of nature that is not already present when the

steps are considered separately[.]'" *Chamberlain*, 935 F.3d at 1349 (quoting *Mayo*, 566 U.S. at 79)

(brackets omitted).  Even if every part of the '528 Patent was non-inventive, PMC has alleged that

the '528 Patent put those elements together in an inventive fashion.  That is enough for the '528

Patent to survive this motion.  Because PMC has adequately pleaded that claims 21 and 32 have an

inventive concept, Netflix's arguments about the dependent claims are unavailing.

**C. The '217 Patent**

PMC has plausibly alleged that the '217 patent has an inventive concept.  Netflix argues that claim 11 is representative.  Claim 11 recites:

11. A method of outputting a multimedia presentation at a receiver station adapted to process a plurality of signals, said plurality of signals including first and second media of said multimedia presentation, said method comprising the steps of:

[a] receiving a subset of said plurality of signals from a source external to said receiver station, each signal of said subset of said plurality of signals including an identifier, wherein said subset of said plurality of signals comprises a plurality of said plurality of signals;

[b] receiving said second medium in a digital data channel from a source external to said receiver station, wherein said second medium is not included in said subset of said plurality of signals;

[c] controlling a microcomputer at said receiver station, through execution of processor instructions, to:

[i] process each identifier of each signal of said subset of said plurality of signals,

[ii] compare each processed identifier to a predetermined identifier, wherein said predetermined identifier is determined at a time prior to receiving said plurality of signals and identifies content of said first medium,

[iii] process only a signal of said subset of said plurality of signals that includes an identifier that matches said predetermined identifier to provide said first medium of said multimedia presentation,

[iv] identify content of said second medium,

[v] generate information based on said second medium based on identifying said content of said second medium, and

[vi] coordinate presentation of said first medium and said information based on said second medium; and

[d] outputting and displaying said multimedia presentation to a user at said receiver station based on said step of controlling such that content of said first medium has a predetermined relationship to said information based on said second medium and said content of said first medium explains a significance of said information based on said second medium.

'217 Patent at 287:41-288:11.

PMC alleges in the complaint that the '217 Patent is designed to "combin[e] separate and distinct media to create a multimedia presentation."  Compl. ¶ 15.  "The media within the presentation are coordinated[.]"  *Id.*  One medium "is related to, and augments" a second medium. *Id.*  The "[k]ey to the invention is the use of identifiers associated with received media, which the receiver station processes" to "identify which of the received media are to be combined to generate the coordinated presentation."  *Id.*  PMC alleges that "[a]dvantages of the '217 invention over prior technologies include . . . : personalization of media presentations; receiver-controlled reception, identification, and selection of different but related media from separate external sources; and receiver generation of a multimedia presentation through the processing and coordinated display of at least two separate media."  *Id.*  "This invention was made in 1981[.]"  *Id.*

Another court has construed the '217 patent.  *See Personalized Media Commc'ns, LLC v. Samsung Elecs. Am., Inc.*, No. 2:15-cv-1754 (JRG) (RSP), 2016 WL 9240544 (E.D. Tex. Sept. 21, 2016), *report and recommendation adopted*, No. 2:15-cv-1754 (JRG) (RSP), 2016 WL 9274742 (E.D. Tex. Sept. 29, 2016).  Here is how *Samsung* described claim 38 of the '217 patent:

> The Court finds claim 38 of the '217 patent is directed to an apparatus that uses a specific way of identifying a "first medium" so that the "first medium" can be coordinated with a "second medium."  Claim 38 recites three principal parts.  First, claim 38 describes the environment in which the claimed invention operates.  The claim states that the invention operates when there is a "subset of plurality of signals from an external source" where "each signal of the subset includes an identifier."  In plainer English, that phrase says the invention operates when there is a plurality of a first "set" of signals that can be divided into a second "set" of signals.  The second "set" of signals has at least two signals and each of the signals in the second "set" must have an "identifier."
>
> Second, claim 38 describes how the second "set" of signals is used to "identify" the "content of the first medium."  The claim states "each" signal in the second "set" of signals contains an "identifier."  A microcomputer compares the "identifier" to a predetermined code and processes a signal when its "identifier" matches the code. The signals that are processed contain the "content of the first medium."
>
> Finally, claim 38 states the microcomputer combines the "first medium" and the "second medium."  It combines the "first medium" and "second medium" by "identifying content of a second medium" and "generating information based on the second medium" using the "identified content."  The microcomputer combines

"presentation of the first medium" and "the information based on the second medium" in a way that results in the "content of the first medium explaining the significance of the information in the second medium." Unpacked, the phrase says that the microcomputer generates information from the "second medium" and coordinates the information with the "content of the first medium."

*Id.* at *3-4 (citations and alterations omitted).

The specification provides an example of what the '217 Patent is designed to do. *See* '217 Patent at 11:25-15:14. The specification asks us to consider a television program called "Wall Street Week" that is about "stock market investing." *Id.* at 11:30. The basic idea is that the '217 invention would generate and display the performance of a user's stock portfolio overlaying the television program. *Id.* at 13:29-34.

The '217 Patent withstood a Section 101 challenge in a prior case. In *Personalized Media Commc'ns, LLC v. Funai Elec. Co.*, the court held that the "'217 patent claims address a specific technological problem rooted in signal transmission and processing. Namely, the '217 claims allow correctly identifying the content of different media received in multiple signals to produce a coordinated presentation using two of the received media." No. 2:16-cv-105 (JRG) (RSP), 2017 WL 957719, at *2 (E.D. Tex. Feb. 22, 2017), *report and recommendation adopted*, No. 2:16-cv-105 (JRG) (RSP), 2017 WL 951860 (E.D. Tex. Mar. 10, 2017). The Court need not decide whether to follow *Funai* to conclude that the '217 Patent is not directed to an abstract idea.

That is because PMC has plausibly alleged that "receiver generation of a multimedia presentation through the processing and coordinated display of at least two separate media" was an inventive concept in 1987. Compl. ¶ 15. The Court cannot determine at this stage that the idea that the receiver itself would generate a multimedia presentation was well understood, routine, and conventional in 1987.[12]

---

[12] *Samsung* held that "whether claim 38 is directed to an abstract idea should be assessed after the claims have been construed." 2016 WL 9240544, at *4. But *Samsung* held that motion to dismiss should be denied because the '217 patent passed *Alice* step two:

Netflix's counterarguments are unavailing.  Most importantly, Netflix does not challenge the specific allegation in the complaint that a receiver's *generation* of a multimedia presentation was an advance over prior art.  Netflix argues instead that "personalization" is an abstract idea.  Netflix analogizes the '217 Patent to a "newspaper caption[ing] a photo" or "a museum post[ing] a sign to explain an exhibit[.]"  Mem. at 27-28; *see also Amazon*, 161 F. Supp. 3d at 330-31 ("Creating a coordinated presentation using user-specific information" is akin to the "'sort of information tailoring is a fundamental practice long prevalent in our system.  There is no dispute that newspaper inserts had often been tailored based on information known about the customer—for example, a newspaper might advertise based on the customer's location.'") (quoting *Intellectual Ventures I LLC v. Capital One Bank (USA)*, 792 F.3d 1363, 1369 (Fed. Cir. 2015).  And "[i]t is clear from *Mayo* that the 'inventive concept' cannot be the abstract idea itself[.]"  *Aatrix II*, 890 F.3d at 1359 (Moore, J., concurring in the denial of rehearing en banc) (citing *Mayo*, 566 U.S. at 72-73).

Netflix's analogies have some bite.  But its arguments are ultimately unpersuasive because the '217 Patent teaches a system in which the receiver itself generates the multimedia presentation.  It is as if the newspaper itself generated the caption, or the museum itself generated the sign.  PMC has plausibly alleged that this was an inventive concept in 1981.

The rest of Netflix's arguments challenge other aspects of the '217 Patent as non-inventive.  But the '217 Patent need only recite one inventive concept to survive this motion.  PMC has plausibly alleged that it does.  Because the Court has rejected Netflix's challenge to claim 11, its challenges to other claims of the '217 Patent also fail.

---

Even if claim 38 were directed to an abstract idea, the Court finds that Samsung has not shown how the arrangement of the elements is conventional or generic.  Samsung points out that the operations and parts recited in the claim are generic or known in the art.  Samsung, however, has not shown that these operations and parts when used in combination fail to disclose an inventive concept.  Indeed, the Federal Circuit has held, "an inventive concept can be found in the non-conventional and non-generic arrangement of known, conventional pieces."

*Id.* (quoting *BASCOM*, 827 F.3d at 1350) (other citation omitted).  Magistrate Judge Ron S. Payne authored both *Samsung* and *Funai*.  Judge Rodney Gilstrap adopted Judge Payne's reports and recommendations in both cases.

**IV. CONCLUSION**

      PMC has plausibly alleged that the patents challenged on this motion have inventive concepts, so Netflix's motion for judgment on the pleadings is DENIED.  The Court's decision is narrow because it must accept as true the allegations in PMC's complaint.  It does not preclude Netflix from challenging these patents under Section 101 on summary judgment and at later stages of this case.

      The Clerk of Court is directed to terminate the motion pending at Dkt No. 57.

      SO ORDERED.

Dated:  July 28, 2020

                                      _____
                                          GREGORY H. WOODS
                                    United States District Judge