USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 8/25/2020

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------X
PERSONALIZED MEDIA                               :
COMMUNICATIONS, LLC,                             :
                                                 :
                                    Plaintiff,   :     1:20-cv-3708-GHW
                                                 :
                  -against-                      :
                                                 :     MEMORANDUM OPINION
NETFLIX INC.,                                    :          AND ORDER
                                                 :
                                    Defendant.   :
-----------------------------------------------------------------X

GREGORY H. WOODS, United States District Judge:

      Personalized Media Communications, LLC ("PMC") is suing Netflix Inc. ("Netflix") for patent infringement. Before the case was transferred here, Chief Judge Rodney Gilstrap of the Eastern District of Texas issued a claim construction opinion. That opinion construed the terms "intermediate transmission station" and "intermediate transmitter station" (collectively, the "ITS terms") differently. *See Personalized Media Commc'ns, LLC v. Google LLC* (*PMC I*), No. 2:19-cv-89 (JRG), 2020 WL 1666462, at *13-15 (E.D. Tex. Apr. 3, 2020). *PMC I* held that the patents define "intermediate transmission station" but do not define "intermediate transmitter station."

      Netflix now moves for reconsideration of *PMC I*'s construction of the term "intermediate transmitter station." The Court holds that the ITS terms are synonyms. Because that is so, they must be construed in the same manner. The Court's construction of "intermediate transmission station" therefore extends to "intermediate transmitter station," and Netflix's motion for reconsideration is GRANTED.

**I. BACKGROUND**

    **A. The ITS Terms**

The ITS terms appear in the claims and the specification of some of the patents PMC claims Netflix has infringed (the "Asserted Patents"). The Asserted Patents are part of a family comprising more than 100 patents that share a common specification. While prosecuting the patent applications that depend on this specification, PMC submitted a "Glossary" of "defined terms" to the Patent Office on multiple occasions. *See* Exs. 61-74 to Texas Dkt No. 151.[1] The term "intermediate transmission station" is in the claims of U.S. Patent Nos. 7,865,920 (the "'920 Patent") and 9,674,560.[2] That term also appears in the common specification and the Glossary. The term "intermediate transmitter station" is in the asserted claims of U.S. Patent No. 8,739,241 (the "'241 Patent") and in one dependent claim of U.S. Patent No. 7,747,217 (the "'217 Patent"), Dkt No. 69-4. Neither the specification nor the Glossary uses that term.

    **B. Claim Construction and Procedural History**

PMC sued Netflix for patent infringement in the Eastern District of Texas. Dkt No. 1. The parties then briefed claim construction. In that briefing, the parties disagreed on the proper construction of the ITS terms. Netflix argued that the specification and the Glossary contained controlling lexicographic definitions. PMC argued that those statements did not meet the standard for a lexicographic definition and should thus be construed according to their plain and ordinary meanings. But neither party argued that the ITS terms should be construed separately. Indeed, both parties briefed the ITS terms as if they were synonymous. *See* PMC's Claim Construction Brief ("PMC's CC Br."), Texas Dkt No. 143, at 8-10; Netflix's Claim Construction Brief, Texas Dkt No. 151, at 5-8.

---

[1] "Texas Dkt" refers to docket entries in the consolidated Eastern District of Texas case, *Personalized Media Communications, LLC v. Google LLC*, No. 2:2019-cv-0090. As described further below, the case was transferred here by joint stipulation of the parties.
[2] PMC originally asserted infringement claims for these patents but dropped the claims before the case was transferred.

*PMC I* held that "[t]he term 'intermediate transmission station' is defined in the Asserted Patents."  *PMC I*, 2020 WL 1666462, at *13.

> [T]he patents provide:  "Hereinafter, . . . stations that receive and retransmit broadcast transmissions are called 'intermediate transmission stations[.]'" . . . The patents also provide:  "It is the further purpose of this invention to provide means and methods for the automation of intermediate transmission stations that receive and retransmit programming.  The programming may be delivered by any means including over-the-air, hard-wire, and manual means.  The stations may transmit programming over-the-air (hereinafter, 'broadcast') or over hard-wire (hereinafter, 'cablecast')."

*Id.* (quoting '217 Patent at 7:10-26, 21:47-52).  *PMC I* held that this language was "clearly definitional[.]"  *Id.*

Even if this "clearly definitional" language itself were inadequate, *PMC I* concluded that the "patentee removed any doubt about the definitional nature of this language in prosecution of related patents that share the same specification (other than the claim sets)."  *Id.*

> For example, during prosecution of related U.S. Patent No. 7,760,890, Plaintiff as the patentee submitted to the Patent Office a glossary of terms defined in the specification, providing:  "The following terms are defined and used in specific ways in U.S. Patent No. 4,965,825 and its continuations, including Applicants' instant specification.  Terms that appear at the left margin in quotation marks are formally defined in the patent disclosures.  The meanings of terms that are shown below without quotation marks are made clear in the context in which they appear. . . .  "intermediate transmission stations" . . . (Hereinafter, stations that receive and retransmit broadcast transmissions are called 'intermediate transmission stations')."
>
> The term[] . . . "intermediate transmission stations" appear[s] in the left margin in quotation marks.  Thus, Plaintiff represented to the Patent Office that th[is] term[] "[is] formally defined in the patent disclosures."  In other words, Plaintiff represented during prosecution of a related patent that the common specification of the Asserted Patents includes [a] formal definition[] of . . . "intermediate transmission station" and identified the definitional language.

*Id.* at *13-14 (citation and ellipsis omitted).  Thus, *PMC I* held that "'intermediate transmission station' means a 'station that can receive and retransmit broadcast transmissions.'"  *Id.* at *15.

Yet *PMC I* also held that "[t]he Asserted Patents do not . . . include [a] clear definition[] of . . . 'intermediate transmitter station.'"  *Id.* at *14.  Although "Defendants identif[ied] language ostensibly definitional of . . . 'intermediate transmission station[,]'" they "offer[ed] scant evidence or

3

argument . . . that the definitional language should be applied to different terms[.]" *Id*. *PMC I* noted that "in the absence of any evidence to the contrary, the Court must presume that the use of these different terms in the claims connotes different meanings." *Id*. (quoting *CAE Screenplates, Inc. v. Heinrich Fiedler Gmbh & Co. Kg*, 224 F.3d 1308, 1317 (Fed. Cir. 2000)) (brackets omitted). So, *PMC I* concluded, the term "intermediate transmitter station" should be construed according to its "plain and ordinary meaning[.]" *Id*.

Shortly after Chief Judge Gilstrap issued his opinion in *PMC I*, he granted the parties' joint motion to transfer the case here. Texas Dkt Nos. 192, 194. This Court then denied Netflix's motion for judgment on the pleadings. *Personalized Media Commc'ns, LLC v. Netflix Inc.*, No. 1:20-cv-3708 (GHW), 2020 WL 4345781 (S.D.N.Y. July 28, 2020).

Netflix now moves for reconsideration of *PMC I*'s construction of the term "intermediate transmitter station." Dkt Nos. 66-68. PMC opposed the motion, Dkt Nos. 81-82, and Netflix replied, Dkt Nos. 88-89.

## II. LEGAL STANDARD

Motions for reconsideration are governed by Local Rule 6.3, which provides that the moving party must set forth "the matters or controlling decisions which counsel believes the Court has overlooked." "Motions for reconsideration are . . . committed to the sound discretion of the district court." *Immigrant Def. Project v. U.S. Immigration and Customs Enf't*, No. 14-cv-6117 (JPO), 2017 WL 2126839, at *1 (S.D.N.Y. May 16, 2017) (citing *Wilder v. News Corp.*, No. 11-cv-4947 (PGG), 2016 WL 5231819, at *3 (S.D.N.Y. Sept. 21, 2016)). "Reconsideration of a previous order by the Court is an extraordinary remedy to be employed sparingly." *Ortega v. Mutt*, No. 14-cv-9703 (JGK), 2017 WL 1968296, at *1 (S.D.N.Y. May 11, 2017) (quoting *Anwar v. Fairfield Greenwich Ltd.*, 800 F. Supp. 2d 571, 572 (S.D.N.Y. 2011)). "A motion for reconsideration should be granted only when the [moving party] identifies 'an intervening change of controlling law, the availability of new evidence, or the need to correct a clear error or prevent manifest injustice.'" *Kolel Beth Yechiel Mechil of Tartikov,*

4

*Inc. v. YLL Irrevocable Tr.*, 729 F.3d 99, 104 (2d Cir. 2013) (quoting *Virgin Atl. Airways, Ltd. v. Nat'l Mediation Bd.*, 956 F.2d 1245, 1255 (2d Cir. 1992)); *see also Gottlieb v. Tyler*, 795 F. App'x 82, 83 (2d Cir. 2020).

## III. DISCUSSION

### A. *PMC I* held that PMC acted as its own lexicographer for the term "intermediate transmission station" but not for the term "intermediate transmitter station."

*PMC I* concluded that PMC had assigned a lexicographic definition to the term "intermediate transmission station" but not the term "intermediate transmitter station." "It is a bedrock principle of patent law that the claims of a patent define the invention to which the patentee is entitled the right to exclude." *Aventis Pharm., Inc. v. Amino Chems. Ltd.*, 715 F.3d 1363, 1373 (Fed. Cir. 2013) (quoting *Phillips v. AWH Corp.*, 415 F.3d 1303, 1312 (Fed. Cir. 2005) (en banc)). "Claim terms generally are construed in accordance with the ordinary and customary meaning they would have to one of ordinary skill in the art in light of the specification and the prosecution history." *Samsung Elecs. Co. v. Elm 3DS Innovations, LLC*, 925 F.3d 1373, 1377 (Fed. Cir. 2019) (quoting *Aventis*, 675 F.3d at 1329).

Courts "deviate from a claim term's ordinary meaning 'when a patentee sets out a definition and acts as its own lexicographer' or 'when the patentee disavows the full scope of a claim term either in the specification or during prosecution.'" *Id.* at 1377-78 (quoting *Aventis*, 675 F.3d at 1330). "The standards for finding lexicography and disavowal are 'exacting.'" *Luminara Worldwide, LLC v. Liown Elecs. Co.*, 814 F.3d 1343, 1353 (Fed. Cir. 2016) (quoting *GE Lighting Sols., LLC v. AgiLight, Inc.*, 750 F.3d 1304, 1309 (Fed. Cir. 2014)). "[T]o act as its own lexicographer, a patentee must 'clearly set forth a definition of the disputed claim term' other than its plain and ordinary meaning. It is not enough for a patentee to simply disclose a single embodiment or use a word in the same manner in all embodiments." *Bradium Techs. LLC v. Iancu*, 923 F.3d 1032, 1044 (Fed. Cir. 2019) (quoting *Thorner v. Sony Comput. Entm't Am. LLC*, 669 F.3d 1362, 1365 (Fed. Cir. 2012)). Rather,

5

"the patentee must 'clearly express an intent' to redefine the term." *Id.* (quoting *Thorner*, 669 F.3d at 1365).

*PMC I* concluded that PMC had acted as its own lexicographer for the term "intermediate transmission station." *See PMC I*, 2020 WL 1666462, at *13-14. The common specification states, "[h]ereinafter, . . . stations that receive and retransmit broadcast transmissions are called 'intermediate transmission stations[.]'" *Id.* at *13 (quoting '217 Patent 21:47-52). In addition to this "clearly definitional" language, PMC "removed any doubt about the definitional nature of this language in prosecution of related patents that share the same specification[.]" *Id.* Thus, *PMC I* held that "[t]he term 'intermediate transmission station' is defined in the Asserted Patents" to "mean[] 'station[s] that can receive and retransmit broadcast transmissions.'" *Id.* at *13-15.

But *PMC I* held that PMC did not act as its own lexicographer for the term "intermediate transmitter station." That was because the Asserted Patents did not "include [a] clear definition[] of" that term. *Id.* at *14. "Defendants identif[ied] language ostensibly definitional of . . . 'intermediate transmission station' and" argued that "this language [was] definitional of the different term[] . . . 'intermediate transmitter station.'" *Id.* Yet "Defendants offer[ed] scant evidence or argument . . . that the definitional language should be applied to different terms and rather presume the definitions apply." *Id.* "The law, however, demands a contrary presumption. Indeed, 'in the absence of any evidence to the contrary, the Court must presume that the use of these different terms in the claims connotes different meanings.'" *Id.* (quoting *CAE Screenplates*, 224 F.3d at 1317). "Thus, the language identified by Defendants d[id] not meet the exacting standard of lexicography for . . . 'intermediate transmitter station.'" *Id.*

### B. The ITS terms are synonyms.

#### 1. Intrinsic evidence

Reconsideration of *PMC I*'s conclusion that PMC did not act as its own lexicographer for the term "intermediate transmitter station" is warranted because "intermediate transmission station"

6

and "intermediate transmitter station" are synonyms. "When construing claim terms," courts begin with "and primarily rely on, the intrinsic evidence, including the claims themselves, the specification, and the prosecution history of the patent, which is usually dispositive." *Personalized Media Commc'ns., LLC v. Apple Inc.*, 952 F.3d 1336, 1339-40 (Fed. Cir. 2020) (quoting *Sunovion Pharms., Inc. v. Teva Pharms. USA, Inc.*, 731 F.3d 1271, 1276 (Fed. Cir. 2013)). That analysis begins with the specification, for "[t]he specification is always highly relevant to the claim construction analysis and is, in fact, the single best guide to the meaning of a disputed term." *Allergan Sales, LLC v. Sandoz, Inc.*, 935 F.3d 1370, 1374-75 (Fed. Cir. 2019) (quoting *Trs. of Columbia Univ. v. Symantec Corp.*, 811 F.3d 1359, 1363 (Fed. Cir. 2016)). And "claims must be read in light of the specification of which they are a part," though a court must be careful not to "read limitations from the written description into a claim." *Bradium*, 923 F.3d 1032, 1049 (Fed. Cir. 2019) (quoting *Wenger Mfg., Inc. v. Coating Mach. Sys., Inc.*, 239 F.3d 1225, 1237 (Fed. Cir. 2001)).

Reading the claims in light of the specification supports the conclusion that PMC used the terms synonymously. Claim 3 of the '217 Patent uses the term "intermediate transmitter station" but does not use the term "intermediate transmission station." *See* '217 Patent at 287:15-16. The opposite is true for the specification: It uses the term "intermediate transmission stations" but does not use the term "intermediate transmitter station." *See, e.g.*, *id.* at 21:47-52. Under the Federal Circuit's decision in *Pickholtz v. Rainbow Techs., Inc.*, that difference is probative evidence that the terms have the same meaning. 284 F.3d 1365 (Fed. Cir. 2002). There, the court construed a patent that used the terms "computer" and "computer system." *Id.* at 1373. The patent at issue "use[d] the term 'computer system' in the specification and the term 'computer' in the claims[.]" *Id.* And "nothing in the patent itself explicate[d] their relationship or indicate[d] any difference in meaning." *Id.* Thus, *Pickholtz* concluded that the patent "provide[d] no indication that the two terms mean different things" and that the terms were "synonyms." *Id.*

7

So too here. The specification uses the term "intermediate transmission station" while the claims use term "intermediate transmitter station." PMC has pointed to nothing in the claims or the specification that "indicates any difference in [the] meaning" of the two terms. *Id.* As in *Pickholtz*, that suggests that the terms have the same meaning.

The prosecution history is an even stronger signal that the two ITS terms are synonyms. The prosecution history is part of the intrinsic evidence of a patent's meaning. *See Apple*, 952 F.3d at 1339-40. Start with the prosecution history of the '241 Patent. When PMC first submitted the '241 Patent, the claims did not include the "intermediate" limitation on a transmitter station. *See* '241 Patent, 3/20/97 Non-Final Rejection Letter, Dkt No. 68-6, at 22-23. So the examiner rejected the claims as indefinite. *See id.* In response, PMC amended the claim to be limited only to an "intermediate transmitter station." *See* '241 Patent, 9/22/97 Claim Amendment, Dkt No. 68-7, at 6-7. In its argument accompanying the amendment, PMC explained that the amendment was supported by the specification's "discuss[ion of] coordination and control of programming at several levels of the communications chain, including . . . intermediate *transmission* stations." *See id.* at 11-12 (emphasis added). This argument—that a discussion of intermediate *transmission* stations supports an amendment limiting a claim to an intermediate *transmitter* station—only makes sense if the two terms are synonyms.

A similar back-and-forth occurred in 2012. The Patent and Trademark Office rejected the then-pending claims of the '241 patent as unpatentable over prior art. PMC amended the claims in response. *See* 9/10/12 Applicant Remarks, Dkt No. 68-8. PMC's amended claim 25 disclosed "[a] method of controlling a remote intermediate *transmitter* station." *Id.* at 2 (emphasis added). As support for the amended claim, PMC cited the specification's statement that "it is the further purpose of this invention to provide means and methods for the automation of intermediate *transmission* stations that receive and retransmit programming." *Id.* at 29 (emphasis added). Again,

PMC's citation of language about intermediate transmission stations when discussing intermediate transmitter stations only makes sense if the two terms are synonyms.

PMC used the term interchangeably in the same document. PMC argued that the

> specification expressly describes the intermediate *transmission* station receiving control information, i.e., control signals, which control the time and channel of transmission of incoming programming from the intermediate station. Thus, unlike the transmission systems disclosed in [the prior art], the intermediate *transmitter* station receives a control signal for controlling the transmission of programming from the intermediate transmitter station.

*Id.* at 55 (emphases added). This is strong evidence that the ITS terms have the same meaning.

PMC also used the terms interchangeably in related patents. "Where multiple patents derive from the same parent application and share many common terms, [courts] must interpret the claims consistently across all asserted patents." *Samsung*, 925 F.3d at 1378 (quoting *SightSound Techs., LLC v. Apple Inc.*, 809 F.3d 1307, 1316 (Fed. Cir. 2015)). As Netflix argues, "in at least five other patents based on the 1987 specification, PMC used the ITS terms interchangeably in the same claim." Memorandum of Law in Support of Motion for Reconsideration ("Mem."), Dkt No. 67, at 18 (citing U.S. Patent Nos. 8,646,001; 8,584,162; 7,774,809; 7,865,920; 7,849,479) (emphasis omitted). Netflix cites claim 32 of U.S. Patent No. 8,646,001. That claim recites:

> 32. A method of communicating signals in a communications network, said communications network including at least one transmitter station including a transmitter, and a **plurality of intermediate *transmission* stations**, each of said **plurality of intermediate *transmission* stations** having a receiver, at least one signal generator operatively connected to said receiver, a transmitter, an automatic control unit operatively connected to said at least one signal generator, a detector operatively connected to said automatic control unit, wherein each said automatic control unit is programmed to perform in a station-specific fashion, said method comprising the steps of:
>
>> originating an information transmission including an instruct signal which is effective, at [at] least one of **said plurality of intermediate *transmitter* stations**, to instruct said at least one of **said plurality of intermediate *transmission* stations** to generate a generation instruction by processing stored data in accordance with said instruct signal, wherein said generation signal is different from a second generation signal generated by at least another intermediate transmission stations of **said plurality of intermediate *transmission* stations**;

>originating a communications control signal which operates at said at least one of **said plurality of intermediate** *transmitter* **stations** to transmit said generation instruction;
>
>and transmitting said information transmission, said instruct signal and said communications control signal.

*Id.* at 18-19 (emphasis added) (citation omitted).  PMC here describes the same "plurality" of "intermediate . . . stations," sometimes using "transmitter" and other times using "transmission."  In other words, PMC used the two interchangeably in the same claim.  *See also id.* at 19-20 (citing claim 24 of U.S. Patent No. 8,584,162 and claim 20 of the '920 patent).  Again, this is strong evidence that PMC believed that both ITS terms were synonyms.

PMC also treated the ITS terms as synonyms during the prosecution of other patents in the same family as the Asserted Patents.  "[T]he prosecution history of one patent is relevant to an understanding of the scope of a common term in a second patent stemming from the same parent application."  *Microsoft Corp. v. Multi-Tech Sys.*, 357 F.3d 1340, 1349 (Fed. Cir. 2004) (citations omitted).  Netflix cites ten examples of PMC using the ITS terms interchangeably spanning decades.  *See* Mem. at 21-22 (citing Dkt Nos. 68-9–68-18).  These examples again show that PMC understood the ITS terms as synonyms.  On the whole, the intrinsic evidence strongly supports the conclusion that the ITS terms are synonyms.

### 2. Extrinsic evidence

Extrinsic evidence confirms this conclusion.  Extrinsic evidence "consists of all evidence external to the patent and prosecution history, including expert and inventor testimony, dictionaries, and learned treatises."  *Cont'l Circuits LLC v. Intel Corp.*, 915 F.3d 788, 799 (Fed. Cir. 2019) (quoting *Phillips*, 415 F.3d at 1317).  "Extrinsic evidence may be used only to assist in the proper understanding of the disputed limitation; it may not be used to vary, contradict, expand, or limit the claim language from how it is defined, even by implication, in the specification or file history."

*Tempo Lighting, Inc. v. Tivoli, LLC*, 742 F.3d 973, 977-78 (Fed. Cir. 2014) (quoting *Bell Atl. Network Servs. v. Covad Commc'ns Grp.*, 262 F.3d 1258, 1269 (Fed. Cir. 2001)).

The inventors' testimony here buttresses the conclusion that the ITS terms are synonymous. Both Harvey and Cuddihy testified that they saw no difference between the ITS terms. *See* Deposition of John Harvey vol. 1, Dkt No. 68-1, at 166:6-167:6; Deposition of James Cuddihy ("Cuddihy Dep."), Dkt No. 68-2, at 169:2-20. True, "[i]nventor testimony as to the inventor's subjective intent is irrelevant to the issue of claim construction[.]" *Cordis Corp. v. Bos. Sci. Corp.*, 561 F.3d 1319, 1338 (Fed. Cir. 2009) (quoting *Howmedica Osteonics Corp. v. Wright Med. Tech., Inc.*, 540 F.3d 1337, 1346-47 (Fed. Cir. 2008)). But both inventors also testified that they considered themselves to be people of ordinary skill in the art at the time of the invention. *See* Deposition of John Harvey vol. 2, Dkt No. 68-19, at 267:5-11; Cuddihy Dep. at 57:10-15. And "[t]he testimony of an inventor, of course, may be pertinent as a form of expert testimony, for example, as to understanding the established meaning of particular terms in the relevant art." *Howmedica*, 540 F.3d at 1347 n.5 (citing *Phillips*, 415 F.3d at 1318). Thus, Harvey and Cuddihy's testimony supports the conclusion that a person of ordinary skill in the art at the time of the invention would have understood the ITS terms to have the same meaning.

### 3. Parties' Prior Litigating Positions

The parties' prior positions in this case also suggest that the ITS terms are synonyms. Netflix originally listed the ITS terms separately in its initial list of terms that required claim construction under the Eastern District of Texas's Patent Rule 4-1. *See* Netflix Rule 4-1 List, Dkt No. 68-3, at 3-4. Under the Eastern District's Patent Rule 4-2, the parties then exchanged charts with their preliminary construction of each claim's terms. *See* PMC Rule 4-2 Chart, Dkt No. 68-4, at 9. PMC listed both "intermediate transmitter station" and "intermediate transmission station" together. *See id.* Indeed, underscoring the similarity of the terms, PMC accidentally listed

11

"intermediate transmitter station" twice in its chart.  PMC later conceded that this was a typo.  *See* PMC's CC Br. at 8 n.3; *see also* Mem. at 6 n.5.  Here are three rows from PMC's chart:

| Claim Term / Phrase (Patent(s)) | PMC's Preliminary Proposed Construction |
|---|---|
| 21. transmitter station ('217, '528 patents) | Plain and ordinary meaning. |
| 22. intermediate transmitter station / intermediate transmitter stations ('217, '241, '920, '560 patents) | Plain and ordinary meaning. |
| 23. receiver station ('344 patent) | Plain and ordinary meaning. |

PMC 4-2 Chart at 9.

PMC argues that it "agreed that the terms could be discussed together because PMC's position on each of these terms was the same—'plain and ordinary meaning'—and the subject matter was the same."  Memorandum of Law in Opposition to Netflix, Inc.'s Motion for Reconsideration ("Opp."), Dkt No. 81, at 15 n.5.  But that argument does not make sense.  As the excerpt from PMC's chart shows, there were other terms for which PMC's "position" was "the same"—that is, that the terms should be construed according to their "[p]lain and ordinary meaning."  *Id.*  Yet PMC listed those terms separately, while it chose to list the ITS terms together.  That choice is another indication that PMC believed the ITS terms were synonyms.[3]

PMC also treated the terms synonymously in its technology tutorial.  In its tutorial, PMC explained that an intermediate transmitter station can receive signals "by any means including over-

---

[3] PMC also argues that Netflix first proposed addressing the ITS terms together.  The record now before the Court does not support that argument.  Netflix listed the ITS terms separately, and PMC chose to list them together.

12

the-air, hard-wire, and manual means." PMC's Tech. Tutorial at 5:57-6:30. But PMC cited a portion of the '217 Patent describing intermediate transmission stations:



Mem. at 8 (upper right highlighting in Netflix's Memorandum). And PMC briefed the ITS terms in the same section before claim construction, never hinting that the two terms meant different things. PMC's CC Br. at 8-10. Netflix notes that at the claim construction hearing, PMC's counsel never mentioned an "intermediate transmitter station" but consistently referred only to an "intermediate transmission station." *See* Transcript of Claim Constructing Hearing, Texas Dkt No. 178. This interchangeable usage suggests that PMC believed that the terms had the same meaning. Thus, both parties' prior litigating positions strongly support the conclusion that the ITS terms are synonyms.

### 4. Conclusion

The intrinsic and extrinsic evidence and the parties' prior litigating positions all point to the conclusion that the ITS terms are synonymous. PMC does not challenge much of this evidence, and its limited challenges are unconvincing. PMC seems to argue that intermediate transmitter station is a broader category of which an intermediate transmission station is an example. *See* Opp. at 20 (analogizing "intermediate transmitter station" to a "fruit" and "intermediate transmission station"

to an "apple"). But there is no evidence that PMC ever understood "intermediate transmission station" to be narrower than "intermediate transmitter station" before the Court issued its opinion in *PMC I*. Nor has PMC articulated a convincing rationale for this construction. Thus, this argument appears to be self-serving and *post hoc* rationalization of *PMC I*. It is unconvincing. For those reasons, the Court holds that the ITS terms are synonymous.

**C. Because the ITS terms are synonyms, they must be construed in the same way.**

Synonymous terms like the ITS terms must be construed in the same way. "The interchangeable use of the two terms is akin to a definition equating the two." *Wasica Fin. GmbH v. Cont'l Auto. Sys.*, 853 F.3d 1272, 1282 (Fed. Cir. 2017) (quoting *Edwards Lifesciences LLC v. Cook Inc.*, 582 F.3d 1322, 1330 (Fed. Cir. 2009)). And when terms are used "interchangeably," the "drafting choice equates the two terms for claim construction purposes." *Id.* (citations omitted); *see also Bid for Position, LLC v. AOL, LLC*, 601 F.3d 1311, 1317 (Fed. Cir. 2010) (construing "bid" and "value of the bid" identically because the claim used the terms interchangeably).

*PMC I* construed the terms differently because "in the absence of any evidence to the contrary, the Court must presume that the use of these different terms in the claims connotes different meanings." 2020 WL 1666462, at *14 (quoting *CAE Screenplates*, 224 F.3d at 1317) (brackets omitted). It is true that there is a "general presumption that different terms have different meanings[.]" *Chi. Bd. Options Exch., Inc. v. Int'l Sec. Exch., LLC*, 677 F.3d 1361, 1369 (Fed. Cir. 2012). "[B]ut that implication is overcome where . . . the evidence indicates that the patentee used the two terms interchangeably." *Baran v. Med. Device Techs., Inc.*, 616 F.3d 1309, 1316 (Fed. Cir. 2010) (citing *Tehrani v. Hamilton Med., Inc.*, 331 F.3d 1355, 1361 (Fed. Cir. 2003)). And here, there is overwhelming evidence that PMC used the two terms interchangeably. That evidence overcomes the general presumption that different terms have different meanings.

14

**D. "Intermediate transmitter station" means a "station that can receive and retransmit broadcast transmissions."**

The Court holds that "intermediate transmitter station" means a "station that can receive and retransmit broadcast transmissions." This conclusion follows from three premises. First, *PMC I* held that PMC defined "intermediate transmission station" as a "station that can receive and retransmit broadcast transmissions." 2020 WL 1666462, at *15. Neither party has moved for reconsideration of that conclusion, so the Court does not disturb it here. Second, the ITS terms are synonymous. And third, synonymous terms must be construed the same way. From those premises, it follows that the term "intermediate transmitter station" means a "station can receive and retransmit broadcast transmissions." As with the term "intermediate transmission station," this lexicographic definition displaces the plain and ordinary meaning of "intermediate transmitter station."

Before Chief Judge Gilstrap issued his opinion in *PMC I*, PMC argued that both ITS terms should be construed according to their plain and ordinary meaning. It reiterates evidence that supported that argument in its opposition to Netflix's motion for reconsideration. But PMC has not moved for reconsideration of *PMC I*'s construction of "intermediate transmission station." In any event, *PMC I*'s conclusion that PMC acted as its own lexicographer as to that term is persuasive. PMC has failed to carry its burden to show that *PMC I* clearly erred in holding that PMC acted as its own lexicographer as to "intermediate transmission station."

The Court in *PMC I* apparently did not have the evidence that "intermediate transmitter station" had the same meaning as "intermediate transmission station" before it. *PMC I* noted that "Defendants offer[ed] scant evidence or argument . . . that the definitional language [of 'intermediate transmission station'] should be applied to ['intermediate transmitter station.]'" *Id.* at *14. Instead, both parties apparently assumed that both terms were synonyms. Absent argument to the contrary, the Court reasonably relied on the "general presumption that different terms have different

15

meanings[.]" *Id.* (quoting *Chi. Bd.*, 677 F.3d at 1369). But as noted above, that presumption is overcome when, as here, the evidence shows that two terms are synonyms. Thus, reconsideration of the construction of the term "intermediate transmitter station" is warranted.

PMC argues that the Court should not revisit the meaning of the ITS terms because *PMC I* is law of the case. The law-of-the-case doctrine "commands that when a court has ruled on an issue, that decision should generally be adhered to by that court in subsequent stages in the same case unless cogent and compelling reasons militate otherwise." *Vaughn v. Phx. House N.Y., Inc.*, 957 F.3d 141, 146-47 (2d Cir. 2020) (quoting *Johnson v. Holder*, 564 F.3d 95, 99 (2d Cir. 2009)). "The doctrine of law of the case is 'discretionary and does not limit a court's power to reconsider its own decisions prior to final judgment.'" *Maraschiello v. City of Buffalo Police Dep't*, 709 F.3d 87, 97 (2d Cir. 2013) (quoting *Virgin*, 956 F.2d at 1255).

This argument is odd. PMC is not wrong, of course, that *PMC I* is law of the case. But a motion for reconsideration necessarily asks a reviewing court to exercise its discretion to set aside a decision that would otherwise constitute law of the case. That is why the standard for a reviewing court to deviate from law of the case is identical to the standard for a motion for reconsideration. *See Vaughn*, 957 F.3d at 147 (noting that "[c]ompelling reasons" for deviating from law of the case "include 'an intervening change in law, availability of new evidence, or the need to correct a clear error or prevent manifest injustice'" (quoting *Johnson*, 564 F.3d at 99-100). Indeed, *Virgin* set forth the standard to be applied on a motion for reconsideration in the context of a discussion of law of the case. *See Virgin*, 956 F.2d at 1255. Thus, PMC's invocation of the law-of-the-case doctrine adds nothing of analytic value.

PMC also argues that Netflix should have moved for reconsideration before the case was transferred. Perhaps, but Netflix's decision to wait is understandable in the circumstances. The Court issued *PMC I* on April 3, 2020. On April 7—just two business days later—PMC and Netflix agreed to transfer the case. Declaration of Clement Roberts, Dkt No. 89, ¶ 2. The parties then filed

16

a joint stipulation to transfer venue on April 16.  Texas Dkt No. 192.  The Court agrees that it would have been impractical for Netflix to raise its motion for reconsideration before the case was transferred.  And as Netflix notes, the motion for reconsideration could not have been fully briefed before the parties stipulated to the change of venue.  In these circumstances, it makes sense that Netflix waited to move for reconsideration until after the case was transferred.

PMC finally argues that "[e]ven with respect to 'intermediate transmission station,'" the conclusion that PMC had acted as its own lexicographer was a "close call[.]"  Opp. at 16.  Not according to *PMC I*, in which the court held that language in the '217 Patent was "clearly definitional" on its own and that "the patentee removed any" lingering "doubt about the definitional nature of this language in prosecution of related patents that share the same specification[.]"  2020 WL 1666462, at *13.

But even if the question were close, that would not change the Court's conclusion.  The Court cannot engage in Solomonic baby-splitting—giving Netflix its favored interpretation of "intermediate transmission station" and PMC its favored interpretation of "intermediate transmitter station"—because whether PMC acted as its own lexicographer is a close question or because that seems like a fair compromise.  Interpreting "intermediate transmitter station" requires the Court to answer two questions.  The first is whether PMC acted as its own lexicographer for the term "intermediate transmission station."  *PMC I* held that the answer is "yes," and neither party has asked the Court to disturb that conclusion here.  The second is whether the ITS terms are synonyms.  For the reasons described above, the answer is also "yes."  So "intermediate transmitter station" must be given the same construction as "intermediate transmission station."  And this conclusion must follow even if both questions are close.

17

## IV. CONCLUSION

Netflix's motion for reconsideration is GRANTED. Because the ITS terms are synonyms, the Court construes the term "intermediate transmitter station" to mean a "station that can receive and retransmit broadcast transmissions."

The Clerk of Court is directed to terminate the motion pending at Dkt No. 66.

SO ORDERED.

Dated: August 25, 2020

                                                          GREGORY H. WOODS
                                                     United States District Judge