# SUSMAN GODFREY L.L.P.

A REGISTERED LIMITED LIABILITY PARTNERSHIP
1301 AVENUE OF THE AMERICAS, 32ND FL
NEW YORK, NEW YORK 10019
WWW.SUSMANGODFREY.COM

HOUSTON | NEW YORK | LOS ANGELES | SEATTLE

RAVI BHALLA
RBHALLA@SUSMANGODFREY.COM
DIRECT DIAL (212) 729-2009

February 18, 2021

**VIA ECF – FILED UNDER SEAL**
Hon. John P. Cronan
United States District Court
Southern District of New York
500 Pearl St.
New York, NY 10007

RE:   *Personalized Media Communications, LLC v. Netflix, Inc.*, Case No. 1:20-cv-03708

Dear Judge Cronan:

We represent Plaintiff Personalized Media Communications ("PMC"). Pursuant to Rule 5(C) of Your Honor's Individual Practices, we request an informal conference to discuss Netflix's continued failure to provide all of the source code relevant to its Trick Play thumbnail feature. PMC respectfully renews its request that Netflix be required to produce the full stack of source code related to its web player. In the alternative, Netflix should be prevented from using its failure to produce relevant source code as both a sword and a shield.

This is the third time PMC has been forced to seek Court intervention regarding Netflix's attempts to hide relevant source code from PMC. As PMC has detailed for this Court numerous times now, Netflix's insistence on doling out its code only on a file-by-file basis has been inadequate and has substantially prejudiced PMC. *See* Dkt. 90 at 6-9; Dkt. 109; Dkt. 116; Dkt. 150. Recently, this Court ordered Netflix to identify the already-produced source code responsible for Trick Play's overlay functionality on Netflix's web player or "produce the code if it has not already done so." Jan. 25, 2021 Minute Entry. Despite that order, and Netflix's prior representations to the Court, Netflix still has not produced all the relevant web player source code.

The parties met and conferred about the Court's order on January 27, and Netflix asked PMC to provide further guidance about the missing code by identifying <u>related</u> code that had been produced to PMC, which is relevant to <u>other</u> Netflix players (i.e., not Netflix web player code). PMC provided that information on January 29, following up with Netflix several times over the next week to inquire about this issue. On February 8, Netflix advised PMC that while it had no additional "Cadmium code" to produce, it would produce "UI code" files.

PMC's expert reviewed those new files on February 9. That review demonstrated yet again the continued deficiencies of Netflix's code productions, insofar as the newly-produced files (like Netflix's previous code productions) invoke other, relevant code files that continue to be withheld from PMC. These missing files include code that is responsible for building the progress bar that appears over the video and below the Trick Play thumbnail on Netflix's web player, and code that links the appropriate Trick Play thumbnail with the user's position along the progress bar. Indeed,

February 18, 2021
Page 2

several of the missing files are named for the specific part of the Trick Play overlay functionality that they perform. Because of at least these identified deficiencies, Netflix's production did not fulfill its court-ordered obligation to finally provide all the code responsible for Trick Play's overlay functionality.

Netflix's most recent production also undermines its various certifications—made during meet and confers, in briefing, and during hearings before this Court—that all of the code responsible for Trick Play's overlay functionality had already been produced. For example, when PMC asked for the full call chain of getFrame() back in July 2020 and ultimately moved to compel its production, Netflix's response was that "PMC already has access to the Cadmium code that calls getFrame()." Dkt. 133 at 6. But the code that Netflix produced on February 9 contains new links in the getFrame() call chain. According to Netflix, these two facts can be squared because the new code Netflix produced is not Cadmium code, it is UI code, a rejoinder that itself cannot be squared with Netflix's statement that its certifications did not rely on "parsing words or word games." Jan. 22, 2021 Hr'g Tr. at 7. At best, Netflix's certifications were contrary to the spirit of PMC's good faith requests, especially considering that PMC clearly understood and used the term "Cadmium" to refer to the entirety of Netflix's web player, *see* Dkt. 109 at 1 (referring to Netflix's "web-based video player called Cadmium"), not to just one piece of it.

These events demonstrate yet again that Netflix's approach to code production has been, and remains, fundamentally flawed and prejudicial. Instead of producing all the code relevant to the features and functions that PMC has accused of infringing its patents, Netflix will produce only one file at a time, and only where PMC has enough information to specifically identify the file it is missing. Where Netflix is fully informed about its own source code, and PMC lacks such information, this approach is contrary to the Federal Rules of Civil Procedure. Indeed, each time PMC is able to make such a specific identification, and Netflix produces new code files (upon Court order), those files confirm that Netflix continues to withhold relevant information. At this rate, it will take years of meeting and conferring, and motions to compel, before PMC has all the relevant code in hand. The only way to finally end this endless process is for Netflix to provide the full code stack.

PMC raised these new deficiencies with Netflix, and the parties met and conferred on February 16. For the reasons explained above, PMC renewed its request for the full web player stack. In response, Netflix offered yet another round of the same process, in which it would produce only the missing files specifically identified by PMC. But this time, Netflix also insisted that, in exchange, PMC waive its right to move this Court to order the full stack produced. Because PMC cannot waive its rights to further code on the basis of information Netflix has not even provided yet—especially in light of Netflix's pattern of deficient code productions—the parties reached an impasse.

Netflix also accused PMC of "moving the goal posts" by asking for code PMC only just discovered Netflix is withholding, and referring to the full stack as the "full web player stack" rather than the "full Cadmium stack". But as explained above, the code missing from Netflix's latest production is part of the overlay functionality for which Netflix is obligated to produce code. And PMC's change of terminology simply adopts the one-sided distinction between Cadmium code and other player code types on which Netflix has apparently been relying to withhold relevant code. By

February 18, 2021
Page 3

calling it the "full web player stack," PMC's goal is to make clear its request is not subject to these one-sided distinctions and includes all player code, whether it be Cadmium code, UI code, or code for which Netflix uses some other name.

PMC acknowledges that the Court previously expressed unwillingness to order the production of the full web player stack, but given the advanced stage of this case and the number of recent adjustments to the schedule, this long-running dispute needs a clear end. Unless it is short-circuited, this iterative code process will continue ad infinitum, at great expense to both the parties and the Court. Accordingly, in light of these recent developments, which demonstrate that this piecemeal code production process is broken and prejudicial to PMC, PMC respectfully requests that the Court reconsider whether production of the full stack is appropriate.

In the alternative, the Court should prevent Netflix from using its deficient source code productions as both a sword and a shield. Rule 37(b) of the Federal Rules of Civil Procedure provides that when a party fails to comply with a court discovery order (such as the Court's recent order), the "disobedient party" can be prohibited "from introducing designated matters in evidence." Similarly, Rule 37(c)(1) provides that when a "party fails to provide information . . . as required by Rule 26(a) or (e), the party is not allowed to use that information . . . to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless." Netflix has failed to provide its relevant source code, in contravention of both this Court's order and Netflix's obligations under Rule 26. Netflix may not rely on substantial justification or lack of harm, where it knows the code it is withholding and PMC has repeatedly sought its production. *See Richmond v. Gen. Nutrition Centers Inc.*, No. 08 CIV. 3577 PAE HBP, 2012 WL 762307, at *5 (S.D.N.Y. Mar. 9, 2012) (collecting cases and announcing its intention to "preclude any evidence bearing on damages which plaintiffs cannot demonstrate was produced during discovery"); *see also* Dkt. #193, Memorandum Order at 3-5, *Gree, Inc. v. Supercell OY*, No. 2:19-CV-00311 (E.D. Tex. Feb. 16, 2021) (relying on Rule 37 to preclude defendant's reliance on source code not produced to plaintiff).

For example, Netflix should be precluded from arguing at summary judgment or in a *Daubert* motion that the code that PMC relies on for its infringement arguments is somehow insufficient. Similarly, it would be fundamentally unfair for Netflix to challenge PMC's theory that Netflix infringes various claims of the '217 patent that require an "identifier" of content. *See, e.g.*, Dkt. 120-1 at 11 (claim 1[e], describing an "identifier which identifies said content of each of said medium"); *id.* at 52 (claim 16[c]). In its infringement contentions, PMC disclosed that Netflix satisfies such claim limitations either by using TCP destination port numbers, or with alternative "media content marker[s]." *See, e.g., id.* at 54-55. Where Netflix has withheld discovery into the alternative media content markers by withholding its code, Netflix's proposed challenge to this aspect of PMC's infringement theory, *see* Dkt. 72 at 13-15, is not well-taken. Permitting Netflix to rely on source code it has improperly withheld to undermine PMC's infringement case would work against the fundamental principles of fairness that govern litigation.

The relief PMC seeks is in response to the great lengths that Netflix has undergone to prevent PMC from accessing the full scope of relevant source in this case. Without intervention from the Court, PMC will be prejudiced by Netflix's serially deficient code productions. For these reasons, PMC requests an informal conference with the Court.

February 18, 2021
Page 4

Sincerely,

*/s/ Ravi Bhalla*

Ravi Bhalla

---

Counsel for all parties are hereby ordered to appear before the undersigned for a conference on February 26, 2021, at 12:00 p.m. to discuss Plaintiff's letter. The Court will conduct the conference by teleconference. At the scheduled time, counsel for all parties should call (866) 434-5269, access code 9176261.

Defendant may file a response to Plaintiff's letter by February 25, 2021.

Because Defendant has determined that there is no basis to seal this letter, (Dkt. 165), the Court will file this memo endorsement publicly. Accordingly, Plaintiff's February 18, 2021 letter motion to seal this submission (Dkt. 163) is denied.

The Clerk of Court is respectfully directed to close the motions pending on Dkts. 163, 164, and 165.

SO ORDERED.

Date: February 23, 2021
      New York, New York

_____
JOHN P. CRONAN
United States District Judge